## In re BATES MACH. CO.

(District Court, D. Massachusetts. January 28, 1899.)

### No. 377.

1. **BANKRUPTCY—ACTS OF BANKRUPTCY BY CORPORATION — AUTHORITY OF DIRECTORS.**

    Under the laws of Massachusetts defining and limiting the powers of the officers and directors of manufacturing corporations, a written admission, by the directors of such a corporation, that the company is unable to pay its debts, and is willing to be adjudged a bankrupt on that ground. is in excess of their authority, and therefore does not constitute an act of bankruptcy by the corporation on which involuntary proceedings against it may be founded.

2. **SAME—RATIFICATION BY STOCKHOLDERS.**

    Where the directors of a corporation, exceeding their statutory authority, make a written admission of its insolvency, and of its willingness to be adjudged a bankrupt on that ground, and thereupon a petition in bankruptcy against it is filed by three creditors, but certain other creditors appear and oppose an adjudication thereon, a subsequent vote of the stockholders, ratifying the action of the directors, will not relate back, so as to cut off the rights of the objecting creditors.

3. **SAME—CORPORATION PROCURING CREDITORS TO FILE INVOLUNTARY PETITION —EVASION OF STATUTE.**

    Where the directors of a corporation make a written admission of its inability to pay its debts, and of its willingness to be adjudged bankrupt on that ground, and request and procure the filing of a petition in bankruptcy against it by three creditors, one of them being the president of the company, and the others acting under his direction and control, alleging such admission as an act of bankruptcy by the corporation, quære, if such petition, though involuntary in form, is, in effect, the voluntary act of the corporation, and an attempt to evade the provision of the bankruptcy act, which withholds from corporations the right to take the benefit of the act as voluntary bankrupts.

In Bankruptcy.

Louis H. Kileski, for Bates Mach. Co.

Geo. Fred Williams, Carver & Blodgett, and Mason & Proctor, for objecting creditors.

LOWELL, District Judge. This was a petition in bankruptcy filed December 3, 1898, by Ingham, Abbott, and McKenzie, against the Bates Machine Company, a Massachusetts corporation, alleging as an act of bankruptcy· that the company had admitted, in writing, its

91 F.—40

inability to pay its debts, and its willingness to be adjudged a bankrupt. The alleged admission was as follows:

"To William A. Ingham, Chauncey L. Abbott, and Daniel W. McKenzie, All of Lowell, in the County of Middlesex and Commonwealth of Massachusetts:

"As creditors of the Bates Machine Company, we deem it our duty to notify you that the Bates Machine Company is unable to pay its debts, and that it is willing to be adjudged a bankrupt on that ground. We should think it would be for the interest of the creditors to take action immediately, as there are several suits which will become liens upon the property, to wit, the suit of one Gage, on the third of December, and the suit of the Fulton Pulley Company, on the tenth of December.

"Very truly yours,         .         The Bates Machine Company,
                                              "By William H. Bent, Treasurer.

"Dec. 2, 1898."

On December 22d the company filed a general denial. On January 2d it filed an amended answer, admitting the allegations of the petition. Three creditors have appeared to object to the adjudication.

The fourth article of the by-laws of the company is as follows:

"Article 4. The directors shall have, as a board, in the management of the affairs of the corporation, and are hereby invested with, all the powers which the corporation itself possesses, not incompatible with the provisions of these by-laws and the laws of the commonwealth. They may appoint and remove at pleasure such officers and employés as may seem to them wise; shall have access to the books, vouchers, and funds of the treasurer; shall determine upon the forms of certificates of stock, and all transfers thereof; shall fix all salaries, including their own; shall declare dividends as they may deem best; to purchase such lands, stocks, buildings, machinery, tools, fixtures, and other real and personal property as they may deem beneficial to the purposes of the corporation, and to sell the same or any part thereof; shall make for their own government such rules and regulations, not inconsistent with these by-laws, as they may think fit; and, at every annual meeting of the stockholders, shall present a brief report of the financial condition of the corporation, and the state of its property and assets."

The petitioners introduced evidence to show that on December 2, 1898, at a meeting of the board of directors, the following vote was passed:

"Voted, that, the company being insolvent, the treasurer be authorized to make such declarations in writing, and to express the willingness of the corporation to be put into bankruptcy, or to take any other legal means to accomplish such purpose, provided he deems it advisable; or that he be authorized to transfer the entire assets of the corporation to any other individual or corporation, taking pay in cash or in stock or in any other manner, at his discretion, and that he be authorized to make settlement with the creditors of the corporation if he deems that course advisable; such settlement to be made in such form and manner as he should select."

At a meeting of the directors, December 23, 1898, it was voted:

"On motion, that the action of the treasurer, in declaring the company insolvent, making such declaration in writing, and expressing the willingness of the corporation to be put into bankruptcy, and using other legal means to accomplish the said purpose, be, and the same are hereby, ratified and approved; and that he be, and hereby is, fully authorized to see that such end be accomplished, as we deem it to be for the best interest of the creditors of the corporation."

At a meeting of the stockholders, January 3, 1899, it was voted:

"That the action of the directors, president, and treasurer in declaring the corporation insolvent, and admitting its willingness to be adjudged bankrupt,

and making said declaration in writing, be, and the same is hereby, approved and ratified, and the directors and treasurer are hereby fully authorized to take any action they deem advisable in regard to the insolvency of the corporation. They are fully authorized to declare in writing the insolvency of the company, and to express in writing its willingness to be adjudged bankrupt, with all the powers necessary therefor that may by them be granted, although not fully expressed therein."

The petitioner Ingham was president of the company, and one of its directors. The petitioner McKenzie was a clerk in his store, acting in obedience to what, I find, were practically his orders. Ingham provided the money which McKenzie lent to the company. The petitioner Abbott was an employé of an electric light company of which Ingham was managing director. He lent money to the company and joined in the petition at Ingham's request, which, under the circumstances, I find was almost equal to a command. The first question to be determined concerns the authority of the directors to make the statutory admission.

The Public Statutes of Massachusetts (chapter 106, § 23) provide that the business of a corporation like the Bates Machine Company shall be managed and conducted by a president, board of directors, clerk, treasurer, and such other officers and agents as the corporation authorizes for that purpose; but no conveyance or mortgage of its real estate, or lease thereof for more than one year, shall be made, unless authorized by a vote of the stockholders at a meeting called for the purpose. It is argued that the provisions of this section, taken in connection with the by-law already quoted, gave the directors of this corporation authority to make the written admission of the corporation's inability to pay its debts and its willingness to be adjudged a bankrupt on that ground, required by Bankrupt Act, § 3 (5). The by-law just quoted does not add materially to the authority given by the statute, inasmuch as the elaborate specification of the directors' powers, though it follows their broad grant of authority, yet so interprets the grant as to show that it was not intended to confer powers which are clearly extraordinary and unusual. The important question in this case is: Do the statutes of Massachusetts confer upon the directors authority to make the statutory admission? The bankrupt act of itself adds nothing to their powers.

That it is part of the business of a corporation organized for manufacturing purposes to go into bankruptcy cannot be maintained. Bankruptcy is not one of the objects for which the Bates Machine Company was organized. The bankrupt act requires that the written admission shall contain two things,—an admission of the proposed bankrupt's inability to pay his debts, and a declaration of his willingness to be adjudged a bankrupt. It may be that the directors, as they have charge of the business of the corporation, and have special knowledge of its affairs, are authorized to make a binding admission of its insolvency; but their knowledge of its business and their supervision of its affairs do not, it seems to me, empower them to express the corporate willingness to become a bankrupt.

It is urged, however, that the directors of a corporation ordinarily have authority, without an express vote of the stockholders, to make an assignment of all its property for the benefit of its creditors, and

that bankruptcy and such general assignment are analogous acts. A general assignment, indeed, is declared to be an act of bankruptcy by section 3 (4) of the statute; hence it is said to follow that directors can express the willingness of the corporation to become a bankrupt. If the question of the directors' authority to make a general assignment for the benefit of its creditors were a new one, much could be urged against recognizing such authority. The decided cases generally rest it upon the admitted right of the directors to control and manage the general business of the corporation, or upon their right to convey its property, or upon their right to pay its debts. Whether a general assignment does or does not operate a dissolution of the corporation, it practically comes to much the same thing, and a dissolution of the corporation is hardly the management of its business. A general assignment is not the conduct or management of the corporate business, but its termination and destruction. It is not that disposition of the corporate property which must be made from time to time in order to carry on the corporate business, but the termination and destruction of the power to make such disposition. It is not the payment of the corporate debts, but ordinarily it is an assertion that they cannot be paid. At this time, however, it is pretty well settled by authority that, under ordinary statutes or charters, the authority to make a general assignment does inhere in a board of directors. See Thomp. Corp. § 6473; Mor. Priv. Corp. § 240; Ang. & A. Corp. (11th Ed.) § 299; and the cases cited in these text-books.

In Sargent v. Webster, 13 Metc. (Mass.) 497, the supreme court of Massachusetts held that the directors of an insolvent manufacturing corporation were authorized to make a general assignment of its property for the benefit of its creditors. By this construction of the statutes of Massachusetts, made by the highest court of the state, this court is bound, but I do not feel disposed to extend its scope. It is to be noticed that the decision in Sargent v. Webster has little practical application to the directors of manufacturing corporations in Massachusetts at the present time. When the decision was rendered, the statutes of Massachusetts provided, without qualification, that the corporation's business should be managed by its president, directors, etc. In 1870, in the codification of the laws relating to manufacturing corporations, it was provided that no conveyance or mortgage of their real estate, nor any lease thereof for more than one year, should be made without a vote of the stockholders; and so, at this time, a manufacturing corporation which holds real estate— as most manufacturing corporations do—cannot make a general assignment of its property for the benefit of its creditors without a vote of its stockholders. In this condition of the law, it may well be doubted if the courts of Massachusetts would now hold valid a general assignment of the property of a manufacturing corporation, even when that property consisted solely of personal estate. The power of the directors having been taken away by statute in the great majority of cases, it is doubtful if the reasoning which led to the original decision would now hold good in the few cases not affected by statute. It is clear that I have no warrant to apply the doctrine of Sargent v. Webster to cases not clearly analogous thereto, and

the expression of the corporate willingness to be made a bankrupt and a general assignment are, at any rate, not precisely similar corporate acts.

There is, moreover, another provision of the statutes of Massachusetts which has an important, even a decisive, bearing upon this case. Section 127 of chapter 157 of the Public Statutes provides that corporations similar to the Bates Machine Company may apply by petition, signed by an officer duly authorized by a vote of a majority of the corporators present and voting at a legal meeting called for the purpose, for the initiation of proceedings in insolvency against the corporation. This act of the corporation, thus regulated by statute, seems to me very closely analogous to the expression of the corporate willingness to become a bankrupt, required by the bankrupt act; and, as the statute provides that a corporation shall not be adjudged insolvent upon its voluntary petition, unless that petition has the authority of the stockholders, it follows that the declaration of willingness to become a bankrupt, upon which are based the proceedings in bankruptcy, must also be authorized by the stockholders, whether those proceedings be in form voluntary or involuntary. The vote of the directors of December 2d was therefore insufficient.

It remains to consider the effect of the ratification of the directors' act by the vote of the stockholders passed January 3, 1899. Assuming that the stockholders could have authorized the statutory written admission of willingness to become a bankrupt, their subsequent ratification of the directors' action would not relate back so as to cut off the rights of the objecting creditors.

Another question is mentioned here to show that it has not been overlooked. Section 4 of the bankrupt act provides expressly that a corporation shall not be entitled to the benefits of the act as a voluntary bankrupt. The proceedings in this case, except in form, amount to a voluntary petition on the part of the Bates Machine Company that it may be adjudged a bankrupt. The company procured the filing of the petition, and the petitioning creditors acted at its request. One of them was its president; the other two were his creatures. It is very clear that, if an adjudication of bankruptcy were made in this case, the plain intent of section 4 of the bankrupt act would be evaded. Whether the law shall be construed so as to permit such evasion, and the provision denying the benefits of voluntary bankruptcy to a corporation shall be nullified by a petition involuntary only in form, is a serious question; but, as I hold that no act of bankruptcy was here committed by the respondent before the petition was filed, this last question need not be answered.

Petition dismissed, with costs to the objecting creditors.