### In re STANDARD SHIPYARD CO.

#### (District Court, D. Maine. January 8, 1920.)

#### No. 396.

1. BANKRUPTCY ⊛61—ADMISSION OF INSOLVENCY NOT ACT OF BANKRUPTCY.
    A letter written by the clerk of a corporation by authority of its directors, stating its inability to pay its debts in full and that the only course open to nonattaching creditors was to bring involuntary proceedings in bankruptcy, in which case the company would admit insolvency and its willingness to be adjudicated bankrupt, *held* not such an unqualified admission as to constitute an act of bankruptcy, under Bankruptcy Act, § 3a (5), Comp. St. § 9587.

⊛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BANKRUPTCY ☞63—RATIFICATION BY CORPORATION OF UNAUTHORIZED ACT
OF BANKRUPTCY INEFFECTUAL.

Under Rev. St. Me. c. 51, § 60, providing that no corporation shall part
with any of its property or corporate rights essential to the conduct of the
corporate business, otherwise than in the ordinary and usual course of
its business, except with the consent of its stockholders at a meet-
ing the call for which shall give notice of the proposed action, a business
corporation is without power to commit the act of bankruptcy specified in
Bankruptcy Act, § 3a (5), Comp. St. § 9587, except by a vote of the stock-
holders at a meeting duly called for the purpose, and ratification of such
an act of the directors by the stockholders after filing of a petition against
the corporation cannot relate back, so as to cut off the rights of objecting
creditors.

In Bankruptcy. In the matter of petition in involuntary bankruptcy
against the Standard Shipyard Company. Petition dismissed.

Carl M. P. Larrabee, of Wiscasset, Me., for petitioning creditors.
Irving E. Vernon, of Portland, Me., for alleged bankrupt.
Williamson, Burleigh & McLean, of Augusta, Me., for answering
creditor.
Clement F. Robinson, of Portland, Me., for an intervener.

HALE, District Judge. This case comes before the court on the
question of adjudication. It is alleged by the petitioning creditors that
the Standard Shipyard Company committed an act of bankruptcy on
the 6th day of June, A. D. 1919, by a letter to its creditors admitting
in writing its inability to pay its debts, and its willingness to be ad-
judged a bankrupt on this ground.

Have the petitioning creditors alleged sufficient facts to bring them
within the fifth act of bankruptcy? They contend that they have in-
troduced such evidence, first, by proof of acts committed prior to the
filing of the petition in bankruptcy; and, second, by proof of acts com-
mitted after such filing.

[1] 1. A letter has been offered in evidence, written by Mr. Vernon,
the clerk of the corporation, as follows:

"June 6, 1919.

"Carl Larrabee—Dear Brother Larrabee: Replying to your inquiry over
the phone of this morning, as I understand the situation the Standard Ship-
yard Company owes some $17,000 or more direct liabilities, besides some con-
tingent claims under power contract and lease.

"The company has not sufficient funds with which to satisfy their creditors,
and the value of the property in the shipyard at Wiscasset is not sufficient to
satisfy the creditors in full. The only course open to the nonattaching cred-
itors is to bring involuntary proceedings in bankruptcy, and the company will
admit its insolvency, and its willingness to be adjudged bankrupt on that
ground.
"Very truly yours."

The record of a resolution passed at a meeting of the directors of
the corporation, held on September 4, 1919, is offered as authority for
the above letter. That resolution confirms the—

"instructions given to the clerk of the corporation to admit the inability of
the corporation to pay its debts, and its willingness to be adjudged a bank-
rupt on that ground."

The resolution then proceeds to admit its liability to pay its debts and its willingness to be adjudged bankrupt, and authorizes the clerk to file answer or answers—

"in any court wherein there is now pending, or may be pending, any petition praying that said corporation be adjudged bankrupt."

There is further evidence tending to show the authority of the clerk to write the above letter, and to take all the action which he took for the corporation in the premises. I assume, for the purposes of the case, that the clerk had such authority, although this is denied by the objecting creditors. It is not contended that the clerk, at the time he wrote the letter, had such authority by a vote of the stockholders themselves.

In the Baker-Ricketson Case (in the Massachusetts District, 1899), 97 Fed. 489, the directors—

"voted, that E. B. Ricketson be authorized in behalf of the Baker-Ricketson Company to appear on behalf of said company in the United States court in Boston in the event of an involuntary petition in bankruptcy being filed against said company, and on behalf of the company to admit in writing its inability to pay its debts, and its willingness to be adjudged a bankrupt on that ground."

It was held that such vote was not in itself a written admission, but merely authorized one of the officers of the company to make the admission, if a petition in bankruptcy should be filed; that it was, therefore, not such an unqualified admission as is required by the statute, to prove the commission of the fifth act of bankruptcy.

Collier says:

"Where an officer of a corporation was deputized to execute such a writing (as an admission in bankruptcy) provided a petition should be filed against it, it is not an act of bankruptcy." Collier on Bankruptcy (11th Ed.) p. 127.

In the case before me, the letter itself advises that the only course open to creditors is to bring involuntary proceedings in bankruptcy, and that, if such proceedings are brought, the company will admit its insolvency, and its willingness to be adjudged bankrupt on that ground. It seems clear to me that this letter is not such an unqualified admission as is required by law to prove the commission of the fifth act of bankruptcy.

[2] 2. Are the acts in evidence after the filing of the petition in bankruptcy sufficient to prove the commission of the fifth act of bankruptcy?

On November 6, 1919, some time after the filing of the petition in bankruptcy, the stockholders of the Standard Shipyard Company held a meeting and voted to ratify the action of the board of directors taken at their meeting of September 4, 1919, and at other meetings—

"with reference to authorizing the clerk of the corporation to admit the insolvency of the corporation in the matter of the involuntary petition in bankruptcy now pending against the company, and with reference to the admission on the part of the directors, and the corporation, of its inability to pay its debts in full, and its willingness to be adjudged bankrupt on that ground, and its willingness to surrender its property for the benefit of its creditors, and with reference to authorizing the clerk, as attorney for the corporation, to file answer or answers," etc.

Further votes were passed, as follows:

"Resolved, that the stockholders hereby ratify and confirm the instructions heretofore given by the directors to the clerk to admit the inability of the corporation to pay its debts and its willingness to be adjudged a bankrupt on that ground, and hereby admit that said bank-inability to pay and willingness to be adjudged a bankrupt on that ground has continued at all times since January 28, 1919, to this date."

"Resolved, that the stockholders hereby admit the inability of this corporation to pay its debts and its willingness to be adjudged a bankrupt on that ground, and authorize the clerk, as the attorney for the corporation, to file answer or answers in any court or courts wherein is now pending, or may be pending, any petition praying that the corporation be adjudged bankrupt."

"Resolved, that the corporation hereby appoints the clerk as its attorney to act for it in the United States District Court for the Southern Division of Maine, in the matter of the involuntary petition of bankruptcy heretofore brought and now pending therein against the corporation, and, as such attorney, does authorize him to file all necessary papers, and take all necessary steps for expediting in every way possible the said bankruptcy proceedings to the end that the property of the corporation may, through the bankruptcy courts, be made available pro rata for the creditors of the corporation, and the officers and directors of the corporation are hereby empowered and directed to execute all necessary instruments, documents, pleas, motions and agreements to and to take all action necessary for securing the purposes of these resolutions."

On examination of these votes, and from all the testimony, it is evident that the intention of the stockholders was to ratify whatever action had been taken by the directors and by the clerk under the votes of the directors. The letter of the clerk, already referred to, is the only expression of the action of the directors in the premises. That was all, then, that there was for the stockholders to ratify. I have already held that such letter is not such an unqualified admission as is required to prove the commission of the fifth act of bankruptcy. It is clear that the ratification by the stockholders does not add anything to this letter, or make it an "unqualified admission." This ratification on the part of the stockholders, then, cannot constitute the letter of June 6th such an admission as is called for by the statute; and it follows that no competent testimony has been brought before me to prove the commission of the fifth act of bankruptcy.

In considering the power of directors in the premises, and the effect of a ratifying vote by the stockholders, passed after the filing of the petition, it is my duty to refer to the decisions of the federal courts, especially in this circuit. In the Bates Machine Co. Case (January, 1899) 91 Fed. 625, Judge Lowell held that, under the laws of Massachusetts, in a case where the directors of a corporation, exceeding their statutory authority, made a written admission of its insolvency and its willingness to be adjudged a bankrupt on that ground, and thereupon a petition in bankruptcy against it was filed by certain creditors; but where certain other creditors objected to the adjudication thereon, a subsequent vote of the stockholders, ratifying the action of the directors, will not relate back, so as to cut off the rights of objecting creditors. In that case, unlike the case at bar, the directors had made an unqualified admission of the inability of the corporation to pay its debts, and of its willingness to be adjudged bankrupt on that ground.

In his opinion, Judge Lowell points out that the directors of a busi-

ness or manufacturing corporation have no authority to make such admission; that, if they had such power, they would be able to make a complete transfer of all the property of the corporation, in violation of the statute of Massachusetts, which provides:

That "no conveyance or mortgage of its real estate, or lease thereof for more than one year, shall be made, unless authorized by a vote of the stockholders at a meeting called for the purpose." Pub. St. Mass. 1882, c. 106, § 23.

He shows that directors cannot derive such power from a by-law, which gives them authority to do the ordinary business of the corporation; for it can be no part of the ordinary business of a corporation, organized for business or manufacturing purposes, to go into bankruptcy. In re Quartz Gold Mining Co. (District Court of Oregon) 157 Fed. 243, affirmed in 158 Fed. 1022, 85 C. C. A. 547, under the name of Van Emon et al. v. Veal; Burbank Co. Case (D. C.) 168 Fed. 719 (opinion by Judge Aldrich).

In the case at bar the question whether the directors of a Maine corporation have power to admit its willingness to be adjudged a bankrupt depends somewhat upon our state statutes. Section 60 of chapter 51 of the Revised Statutes of Maine provides:

"No corporation shall sell, lease, consolidate or in any manner part with its franchises, or its entire property, or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of its business, except with the consent of its stockholders at an annual or special meeting, the call for which shall give notice of the proposed sale, lease or consolidation."

This prohibition is positive. It forbids a corporation to part with any of its franchises, or anything essential to the conduct of its corporate business, "otherwise than in the ordinary and usual course of its business."

It cannot be said that it is a part of the usual course of business of a manufacturing corporation to go into bankruptcy. It is clear that it would be no part of the duty of a board of directors, under the foregoing statute, to put a corporation into bankruptcy by admitting its inability to pay its debts and its willingness to be adjudged a bankrupt. In Rollins v. Clay, 33 Me. 132, our Maine court held that:

"The directors of a corporation are authorized, by virtue of their office, to transact its ordinary and customary business, unless the charter and by-laws otherwise determine. But they are not authorized, without some special authority, to make sale of that portion of its estate or property essentially necessary to be retained to enable it to transact its customary business."

Although corporation law has deepened and broadened since 1851, I do not find that the rule relating to a Maine corporation, then announced by Chief Justice Shepley, in speaking for the court, has been substantially changed.

I cannot extend the scope of corporate power beyond the limit imposed by our Maine statutes. I am of the opinion that a business corporation has no power to commit the fifth act of bankruptcy, except by vote of its stockholders, and that such act can be authorized only by such vote at a meeting duly called for the purpose; that the ratification of such action of directors of a corporation, by vote of the

stockholders, after the filing of the petition in bankruptcy, cannot relate back, so as to cut off the rights of the objecting creditors.

The petitioning creditors present many reasons to induce the court to proceed, in a liberal spirit, to view their rights, urging that it is unconscionable that a single attaching creditor shall be allowed to absorb an estate against the interests of many general creditors. If it were merely a question of allowing a lame petition to be made whole, or if it were in the power of the court to say that, under all the circumstances, the corporation ought to be in bankruptcy, and that, therefore, a petition having been filed, the court might proceed upon vague and general grounds to order adjudication, in disregard of vital objections inhering in the case, then there would be great force in the petitioners' suggestions and in their citation of law. But I do not find that cases referred to by their counsel assist me in determining the precise questions now before me. In re Yaryan Naval Stores Co., 214 Fed. 563, 131 C. C. A. 15; In re Veler, 249 Fed. 633, 161 C. C. A. 543; Brinkley v. Smithwick (D. C.) 126 Fed. 686.

It is insisted, also, by the learned counsel for the petitioning creditors that the reasoning of the Bates Machine Co. Case should not be applied, since the act of 1910 (Act June 25, 1910, c. 412, 36 Stat. 838), which permits voluntary corporate bankruptcy, and that this suggestion is emphasized by the query of Judge Lowell in the latter paragraphs of his opinion. I agree with counsel that, since the passage of the act of 1910, courts have adopted, so far as possible, a liberal policy with reference to this subject. But no policy, however liberal, permits me to find in the proofs before me, any competent evidence that the respondent committed the fifth act of bankruptcy, before the filing of the petition.

The result is that I am forced to order that the petition for adjudication be dismissed. A decree consistent with this opinion may be presented.