### In re MONARCH OIL CORPORATION.

(District Court, S. D. Ohio, W. D. November, 1920.)

Bankruptcy ⏾16—Principal place of business of corporation not changed by receivership.

> Under Bankruptcy Act, § 2, subd. 1 (Comp. St. § 9586), where a Delaware oil company was licensed to do business in Kentucky, owned oil wells, and was engaged in the production of oil in that state, and was not licensed to do business in Ohio, but merely maintained its corporate offices, kept its books and records, and held its stockholders', directors', and executive committee meetings, and directed its business there, the appointment of a receiver for it in Kentucky by the state court in June did not give the Ohio federal court jurisdiction to act upon its voluntary bankruptcy petition in the following May, on the ground that its principal place of business for the six months next prior thereto had been in Ohio; for its principal place of business, being in Kentucky prior to the receivership, was not, by the appointment of the receiver, shifted to Ohio.

In Bankruptcy. In the matter of the Monarch Oil Corporation, bankrupt. On exceptions to referee's report, finding the court had jurisdiction to make adjudication. Exceptions sustained, and petition dismissed.

Dolle, Taylor, O'Donnell & Geisler, of Cincinnati, Ohio (John D. Ellis, of Cincinnati, Ohio, of counsel), for petitioners.

Herbert L. Jackson, of Litchfield, Ill., for bankrupt.

PECK, District Judge. On exceptions to the report of the referee finding that this court had jurisdiction to make the adjudication and that the petitions to set aside such adjudication should not be granted.

The Monarch Oil Corporation was organized under the laws of the state of Delaware, but transacted no business there. It was licensed to do business in Kentucky, owned oil wells, and was engaged in the production of oil in that state. It was not licensed to do business in Ohio, but maintained its corporate offices, kept its books and records, and held its stockholders', directors' and executive committee meetings and directed its business here. In June, 1919, suit was brought against it in Kentucky by certain mechanics' lienors and a receiver was appointed by the state court. By the order of the court he was directed to take possession at once of all the property and assets of the corporation wherever situated, including all books, accounts, papers, moneys, and all evidence of indebtedness, and all of said property and assets were thereby ordered to be delivered to him. He was further directed to proceed with an investigation of the affairs of the corporation, to have charge of its affairs and of the conduct thereof, with power and authority to prosecute and defend all necessary litigation, and was directed to operate the property of the corporation and report from time to time to the court. The receiver proceeded to take charge and operated the business of the petitioner actively for a time and then reported to the state court a condition of hopeless insolvency. The corporation continued to hold meetings in Cincinnati for the election of officers, the discussion of its embarrassed affairs, and

⏾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the appointment of counsel in an effort to remove the receivership litigation to the federal court, and, failing therein, to prosecute this petition in bankruptcy.

Until the receiver was appointed there is no doubt that its principal place of business, within the meaning of section 2, subd. 1, of the Bankruptcy Law (Comp. St. § 9586), was in Kentucky. Continental Coal Corporation v. Roszelle Bros. (C. C. A. 6th Cir.) 39 Am. Bankr. Rep. 562, 242 Fed. 243, 155 C. C. A. 83. Upon May 5, 1920, it filed here its voluntary petition in bankruptcy, alleging that its principal place of business for the greater portion of six months next prior thereto had been Cincinnati. What was the effect of the appointment of the receiver? Of such a receivership Lord Atkinson said, in Moss Steamship Company, Limited, v. Whinney, [1912] Appeal Cases, at page 263:

"This appointment of a receiver and manager over the assets and business of a company does not dissolve or annihilate the company, any more than the taking possession by the mortgagee of the fee of land let to tenants annihilates the mortgagor. Both continue to exist; but it entirely supersedes the company in the conduct of its business, deprives it of all power to enter into contracts in relation to that business, or to sell, pledge, or otherwise dispose of the property put into the possession, or under the control of the receiver and manager. Its powers in these respects are entirely in abeyance."

The language quoted has been adopted as the text of Clark on Receivers, § 227. In Blum Bros. v. Girard National Bank, 248 Pa. at page 156, 93 Atl. at page 943, Ann. Cas. 1916D, 609, concerning receivers, the court say:

"* * * The effect of their appointment is to remove those in charge of the management of the corporation and to place the receivers in possession and control of its business and assets, as custodians for the benefit of creditors and others ultimately entitled."

The receivership here is to be distinguished from that involved in Re E. & G. Theater Co. (D. C. Mass.) 35 Am. Bankr. Rep. 255, 223 Fed. 657. There the receiver does not appear to have been one appointed for the assets and affairs generally of the corporation, but merely to have custody and operation of a theater of which the bankrupt's landlord had undertaken to repossess himself for nonpayment of rent. While it is true that a corporation in the hands of a receiver retains its organization, together with a limited field of activity, such as the right to meet, elect officers, to sue and be sued, to take steps looking toward its reorganization and the resumption of its property and business, and, under some circumstances, even to reacquire its property at the receiver's sale (5 Thompson on Corporations, § 6370), nevertheless, such steps have to do with the corporation's own organization, as distinguished from doing business in the ordinary sense of maintaining commercial relations with other persons. Whether the place of such activities may, under different circumstances, constitute the principal place of business, it is not necessary to determine.

When this corporation was divested by the order aforesaid of the possession of its assets and the charge and conduct of its affairs, it ceased to do business in the usual acceptation of the phrase. It could not buy; it could not sell; it could not contract in such a way as to

bind its assets in the hands of its receiver; and it did not undertake to do so. Nor did it undertake to enter into any new contractual relations in this district during the six months next preceding the filing of a petition in bankruptcy, unless it was by the appointment of counsel, whom it could not undertake to pay, except upon the contingency that it should once more come into possession and control of its assets.

It has been held that the business of the receiver is not the business of the corporation for the purposes of this section of the act. In re Thomas McNally Co. (D. C. N. Y.) 31 Am. Bankr. Rep. 382, 208 Fed. 291; In re Perry Aldrich Co. (D. C. Mass.) 21 Am. Bankr. Rep. 244, 165 Fed. 249. But that point is not here involved, inasmuch as the receiver was not appointed in this district and did not carry on the business here.

This case is to be distinguished from In re Guanacevi Tunnel Co. (C. C. A. 2d Cir.) 29 Am. Bankr. Rep. 229, 201 Fed. 316, 119 C. C. A. 554, where it was held that the corporate office in New York was the principal place of business of an Arizona mining company, which had never engaged in mining and of which the principal activities had been connected with the sale of its stock and the payment of its running expenses from that office, which had been designated by its directors; where, also, the books were kept and meetings held and the moneys of the company disbursed. Obviously, some business had been transacted there, and no principal place of business had ever been estalished elsewhere. But in this case no disbursements were or could have been made at Cincinnati; the receiver was entitled to possession of all books and records, the principal place of business had theretofore been established in Kentucky, and the right to conduct that business had been taken from the corporation and vested in the receiver. If the principal place of business of this corporation was in Cincinnati it must be that whenever the affairs of a corporation, no matter how large they may be, pass into the hands of a receiver and manager appointed in the state where its real business is carried on, its principal place of business shifts to the meeting room of its stockholders, directors and officers, however remote from the real scene of its activities, the place where its assets to be administered and creditors to be protected are to be found. Such a rule does not appear to be required by any direct and controlling authority, nor to be best calculated to obtain a convenient, speedy and economical administration of a bankrupt's estate.

It is therefore concluded that Cincinnati was not the principal place of business of the petitioner for the major portion of six months next preceding the filing of the petition. The exceptions must be sustained and the petition dismissed for want of jurisdiction.