ROYAL INDEMNITY CO. ET AL. *v.* AMERICAN BOND & MORTGAGE CO.

Nos. 585 and 586.   Argued March 21, 1933.—Decided April 10, 1933

*Mr. Selden Bacon,* with whom *Mr. Saul S. Myers* was on the brief, for petitioners.

*Mr. William E. Leahy,* with whom *Messrs. Edmund M. Toland, William J. Hughes, Jr.,* and *A. L. Schapiro* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

These cases present two questions:

Has the location where a corporation maintained its main office and transacted most of its business ceased to be the principal place of business for the purposes of jurisdiction in bankruptcy if, during the greater portion of six months preceding the filing of the petition, the company's assets and affairs were in custody and control of equity receivers?

Have creditors standing to ask the vacation of an adjudication based on a petition filed by authority of the directors of the bankrupt; where a statute of the state of incorporation forbids transfer, except in the usual course of business, of the franchises or assets of the company, without stockholders' assent?

The relevant facts may be briefly stated.

The respondent, a Maine corporation, had its principal place of business in Chicago, Illinois. May 21, 1931, unsecured creditors brought suit against it in the United States District Court for Northern Illinois, averring solvency and existing difficulty in meeting pressing obligations, and praying the appointment of receivers. On the same day other creditors filed a petition in bankruptcy in the same court. The company appeared in the equity suit and consented to the granting of the prayer of the bill. Receivers were appointed, took possession of the assets and proceeded to administer them. An answer to the petition in bankruptcy denied insolvency or acts of bankruptcy. May 25, 1931, the Royal Indemnity Company

and others filed a petition in bankruptcy against the respondent in the United States Court for the District of Maine. Answer was made denying insolvency and the commission of the alleged acts of bankruptcy. The company sought to transfer the cause to the court in Illinois, which the petitioners opposed. Thereafter the petitioners moved in the Illinois bankruptcy proceeding to dismiss the petition, for alleged defects, and to stay all proceedings under General Order No. 6, pending hearing upon the involuntary petition in Maine. The court denied the motion to dismiss, but granted a stay effective until hearing in the Maine district. September 5, 1931, the respondent withdrew its answers in the Illinois and Maine bankruptcy cases, thus abandoning its contest of adjudication in both. On the same day it filed a voluntary petition in the Illinois District Court, and adjudication was immediately entered.

September 10, 1931, the petitioners prayed the Illinois court to vacate the adjudication and for a stay pending action in Maine. The motion to vacate raised the questions of law we have stated. The court set the cause down under Equity Rule 29 for disposition of these questions. By order entered April 6, 1932, it decided them adversely to the petitioners. The respondent having filed an answer denying certain of the averments of the petition, the court directed that the cause be set for hearing so that the petitioners, if they desired, might offer proof. No evidence was offered, and in default thereof the court held a hearing on the petition and answer, and on May 3, 1932 made a final order refusing to vacate the adjudication. Separate appeals were allowed from both orders, and the Circuit Court of Appeals affirmed them. The case is here on certiorari.

*First.* The Bankruptcy Act invests each district court, as a court of bankruptcy, with jurisdiction to " adjudge persons bankrupt who have had their principal place of

business, resided, or had their domicile" within the court's territorial jurisdiction, "for the preceding six months, or the greater portion thereof."[1] For three months and ten days of the six months preceding the filing of the respondent's voluntary petition, its affairs had been in the control of receivers having the usual powers of management. The decree appointing them included an injunction restraining the corporation, its officers and agents, from interfering with, transferring, selling, or disposing of the property, assets or income of the respondent, or taking possession or attempting to sell or dispose of any part of the same. The result, say the petitioners, is that the corporation thereupon ceased to have a principal place of business in the Northern District of Illinois. The claim is that the Bankruptcy Act refers to the place where the bankrupt is doing business, and not to a place where a business the company once owned is being conducted by someone else; that the business is not a separate entity or essence irrespective of the identity of the person conducting it. The business is said to have passed out of the hands of the respondent and to have been taken over in such sense that the company ceased to be in the business theretofore conducted at its former place of business, even though the business itself, as such, was continued by the receivers.

The argument ignores the practical purpose of the statute as applied to such a situation. The decree in equity and its execution by officers of the court did not change the ownership of the assets or of the business. The corporation continued to have the only business owned before the appointment of receivers, though the actual conduct of its operations was for the time being vested in the court's appointees. Its corporate existence

---

[1] U.S.C., Tit. 11, § 11. The word "persons" as used in this section includes corporations. U.S.C., Tit. 11, § 1 (19).

and functions as a corporation continued. Whether its affairs were in the course of winding up or were being managed in the hope of restoration of full control to the corporate agencies is immaterial. Until a winding up had been effected, the business formerly conducted by the company in Chicago continued to be the respondent's business and not that of another, and the place where that business was conducted, whether by receivers or by the corporate officers, still remained the "principal place of business," in the common acceptation of the phrase. In these days of corporate activity it is not unusual for a company chartered in one of the states to conduct most, if not all, of its business in another state far removed from that of incorporation. Considerations of convenience no doubt prompted the Congress to permit the initiation of a bankruptcy in the state where the business is in fact transacted rather than that of the domicile, where often none is done. Unnecessary inconvenience and expense may be inflicted upon creditors if they are required to participate in a proceeding conducted hundreds or thousands of miles from the situs of the bankrupt's activities, where the books and records are usually kept. That Congress was mindful of this is evident from the provisions for transfer of a cause by one court of bankruptcy to another where a proceeding is pending against the same bankrupt, for the greater convenience of the parties in interest.[2] We should therefore construe the language of the act so as to effectuate the evident purpose of the legislation, and not so narrowly as to defeat the true intent of Congress. We hold that the District Court for the Northern District of Illinois, in re-

---

[2] The respondent petitioned the Maine District Court to transfer the proceeding there initiated to the Illinois District Court, as authorized by U.S. Code, Tit. 11, §§ 11 (19) and 55. An order for such transfer was made, 58 F. (2d) 379, for the reason that administration in Illinois would be more convenient to the parties in interest.

spect of respondent's principal place of business, had jurisdiction to entertain the petition.[3]

*Second.* The Revised Statutes of Maine, Chap. 56, under the caption "Rights of Minority Stockholders," enact:

"SEC. 63. Corporation not to sell franchises or entire property without consent of stockholders. No corporation shall sell, lease, consolidate or in any manner part with its franchises, or its entire property, or any of its property, corporate rights or privileges essential to the conduct of its corporate business and purposes, otherwise than in the ordinary and usual course of its business, except with the consent of its stockholders at an annual or special meeting, the call for which shall give notice of the proposed sale, lease or consolidation. All such sales, leases and consolidations shall be subject to the provisions of this and the eleven following sections, and to the prior lien of stockholders as therein defined."

After providing that the act shall not apply to mortgages of corporate property, the sections following regulate methods of effecting consolidations, the valuation and payment for the stock of dissenting minority shareholders, etc. We are told that this statute prohibits the filing of a voluntary petition in bankruptcy by authority of a resolution of the board of directors, and that a shareholders' vote is required to authorize such action. No case decided by the Maine courts is cited in support of this assertion. But it is said that the filing of such a petition is a conveyance of all of the corporate property, and so plainly within the statutory prohibition. We cannot agree.

---

[3] Compare *In re C. Moench & Sons Co.*, 130 Fed. 685; *Tiffany* v. *La Plume Condensed Milk Co.*, 141 Fed. 444; *In re Monarch Oil Corp.*, 272 Fed. 524; *In re American & British Mfg. Co.*, 300 Fed. 839. Contra, *In re Perry Aldrich Co.*, 165 Fed. 249; *In re McNally Co.*, 208 Fed. 291.

The petition in a voluntary or involuntary proceeding is a pleading. The entry of an adjudication vests title in the trustee, and this is the act of the court, not of the petitioner. Moreover, it seems too plain to need elaboration that the statute does not in terms affect the initiation of a bankruptcy proceeding, and was passed for a wholly different purpose.

We might rest our decision as to the second question upon this ground. But there is another equally persuasive. Statutes such as the one relied on are intended for the protection of stockholders and have nothing to do with the interests or rights of creditors. Even if action of directors authorizing the filing of a voluntary petition, or admitting inability of the corporation to pay its debts and its willingness on that ground to be adjudged a bankrupt, thus creating an act of bankruptcy under § 21 of the Act,[4] were in excess of the authority conferred, or otherwise invalid, creditors could not for that reason attack the consequent adjudication.[5] The question is purely one of the internal management of the corporation. Creditors have no standing to plead statutory requirements not intended for their protection. If the stockholders' rights had been infringed, and they chose to waive them, a creditor could not assert them in opposing an adjudication.

The judgments are

*Affirmed.*

---

[4] U.S.C., Tit. 11, § 21 (a) (5).

[5] See *In re Guanacevi Tunnel Co.,* 201 Fed. 316; *In re United Grocery Co.,* 239 Fed. 1016; *In re Ann Arbor Mach. Corp.,* 274 Fed. 24; *In re E. T. Russell Co.,* 291 Fed. 809; *In re A. C. Wagy & Co., Inc.,* 22 F. (2d) 9; *In re Pneumatic T. S. Co.,* 60 F. (2d) 524; *Chicago Bank of Commerce* v. *Carter,* 61 F. (2d) 986. Contra: *In re Bates Machine Co.,* 91 Fed. 625; *Home Powder Co.* v. *Geis,* 204 Fed. 568; *In re Russell Wheel & Foundry Co.,* 222 Fed. 569; *In re Standard Shipyard Co.,* 262 Fed. 522.