## In re KNEPPER.

### No. 21191.

District Court, N. D. New York.

Nov. 15, 1935.

Leo O. & Henry F. Coupe, of Utica, N. Y. (Henry H. Harwood, of New York City, of counsel), for petitioner Consolidated Gas Co. of New York.

George J. Hatt, 2d, of Albany, N. Y., for bankrupt.

COOPER, District Judge.

Consolidated Gas Company of New York, a creditor of the bankrupt, obtained an order to show cause why "an order should not be made re-opening the above entitled proceedings and vacating the discharge of the bankrupt therein and why such other and further relief should not be granted as may be just in the premises."

The bankrupt filed his voluntary petition with schedules in this court on June 6, 1934, and was adjudicated the same day. The petition alleged: "That he has resided (or has resided or has had his domicile) for the greater part of six months immediately preceding the filing of this petition at 1852 Eastern Parkway, Schenectady, N. Y."

The matter was referred to the referee in Schenectady. The schedules list Consolidated Gas Company as a creditor having two separate claims, and give its address as 4 Irving Place, New York City.

Notice of the first meeting of creditors was sent to all scheduled creditors according to the affidavit made by the secretary of the referee, including Consolidated Gas Company at the above-stated address. Such notice was sent in an official post-free envelope having this statement in the upper left-hand corner:

"U. S. District Court,
"Office of Referee in Bankruptcy,
"Schenectady, Saratoga, Warren & Washington Counties,
"214 State Street,
"Schenectady, N. Y."

The schedules show heavy liabilities and no assets save $200 of wearing apparel, claimed to be exempted, and life insurance policies having a cash surrender value of $6,237, payable to a daughter-in-law, which were said to be subject to loans and claimed to be exempt.

The Consolidated Gas Company has filed no claim.

Petition for discharge was filed July 9, 1934, and notice of application for discharge made returnable September 1, 1934.

The secretary of the referee makes affidavit that she mailed notice of the application to all creditors in the same kind of official post-free envelope, including the Consolidated Gas Company at No. 4 Irving Place, New York City, N. Y.

No objections to discharge were filed, and the discharge was duly granted.

After one year from the date of the discharge the bankrupt moved in the New York Supreme Court to have the Consolidated Gas Company judgment discharged of record.

Thereupon, the Consolidated Gas Company made this application.

The pending application is made upon the verified petition of the judgment creditor, the affidavits of Henry H. Harwood, counsel for the petitioning gas company, Henry H. Keegan, an investigator of New York City, William H. Jackson, an investigator of Schenectady, and Charles W. Eck-

el, an election commissioner of the county of Schenectady. Later there was submitted the affidavit of Henry H. Boden, file clerk in the law department of the gas company.

All these affidavits go to support the contention that the residence of the bankrupt was New York City and not Schenectady, except that of Boden, which states: "That all notices received by the Consolidated Gas Company concerning bankruptcy proceedings instituted by creditors (debtors) of said company are filed under his supervision and control of the Law Department of said Company. That your deponent has personally searched the bankruptcy files of said Company and that no notice in the matter of the petition of Herman Knepper to be adjudged a bankrupt is in the said file."

The opposing affidavits are those of the bankrupt, his sister, Satie Felson, and his nephew Martin, who all say that he resided at 852 Eastern Parkway, Schenectady, N. Y., and the affidavit of Irving L. Lees, who was attorney for the bankrupt in the motion in the New York Supreme Court to have the gas company judgment discharged of record.

Lees states that in the Supreme Court proceedings of October 1, 1935, Henry A. Harwood "did not deny that notice of the bankruptcy proceedings had been obtained by the Consolidated Gas Company and went on to specifically state that they had received it, but that in all probability it had been misplaced, lost or overlooked," and that when the affiant and said Harwood left the court after the adjourned day October 15, 1935, "said attorney for the Consolidated Gas Company (Harwood) again reiterated the statement that the notice of the bankruptcy had been received by the Consolidated Gas Company."

If this application to reopen the bankruptcy proceedings is controlled by section 15 of the Bankruptcy Law (11 U.S.C.A. § 33), it must be denied.

That section is as follows: "§ 33. The judge may, upon the application of parties in interest who have not been guilty of undue laches, filed at any time within one year after a discharge shall have been granted, revoke it upon a trial if it shall be made to appear that it was obtained through the fraud of the bankrupt, and that the knowledge of the fraud has come to the petitioners since the granting of the discharge, and that the actual facts did not warrant the discharge."

The application was not made within a year; there is no allegation that the discharge was obtained by fraud; nor that the actual facts did not warrant a discharge.

The question whether or not there was undue laches depends largely upon whether or not the creditor received notice of the first meeting of creditors or of the application for discharge. This is discussed in another connection later herein.

There is a plain inference from the moving affidavits that the bankrupt was guilty of fraud in filing his petition in bankruptcy in the Northern District in which Schenectady is located instead of New York where it is claimed he resided, but the fraud intended in section 15 above is probably fraud in obtaining the discharge. In re Hoover (D.C.) 105 F. 354, 5 A.B.R. 247; In re Weintrob (D.C.) 263 F. 904, reversed on other grounds in John B. Ellison & Sons v. Weintrob (C.C.A.) 272 F. 466.

It is not, however, necessary to determine that question. Even if fraud were charged, the one-year provision of section 15 is an unsurmountable bar in obtaining the discharge, and petitioner can have no relief under section 15.

Petitioner, therefore, must depend upon the inherent power of the court to vindicate its own rights and to protect against deception and fraud. In re Lansley, 15 F.(2d) 471, 472 (C.C.A.2); Rash v. Metzger, 31 F.(2d) 424 (C.C.A.3).

These are the only considerations which can move the court to action.

Aside from alleged failure to receive notice in the bankruptcy proceedings, the sole charge here is that the bankrupt was a resident of New York City in the Southern District, and not of Schenectady in the Northern District, for the greater part of six months preceding the filing of his petition on June 6, 1934.

But if the Consolidated Gas Company had notice of the adjudication in the Northern District, either from receipt of notice of the first meeting of creditors or notice of the application for discharge, and waited over a year after the discharge was granted, it is guilty of laches, and its application should be denied. Rudebeck v. Sanderson, 227 F. 575 (C.C.A.9); Mason

v. Dean, 31 F.(2d) 945 (C.C.A.9); Allen v. Thompson (D.C.) 10 F. 116.

The burden of proof is that the creditor did receive notice both of the adjudication and of the application for discharge.

The affidavit of mailing is clear that notice was mailed in an official envelope, giving the correct name of the creditor and the correct address. Attorney Lees, who appeared for the bankrupt in the state court proceedings to discharge the judgment makes affidavit that the attorney for the judgment creditor, the petitioner here, admitted that notice had been received and probably been mislaid.

Opposing this is only the affidavit of the creditor's filing clerk in its law department that he had examined the files where such notices are placed and could find no such notice. The date of the examination is not stated.

A presumption arises that a letter properly addressed, sealed, stamped, and mailed in a post office box is received by the addressee. That presumption can be overthrown by positive proof that it was never received but not by proof that a clerk having charge of the receipt of such notices looked in the file where they are ordinarily filed at some unstated time, but presumably more than one year after discharge, and could find no notices.

The authorities cited by the creditor to support its contention depend on their own particular facts and have little analogy of principle.

In John B. Ellison & Sons v. Weintrob (C.C.A.) 272 F. 466, notice of application for discharge was neither published or mailed.

In Rash v. Metzger (C.C.A.) 31 F.(2d) 424, 13 A.B.R.(N.S.) 454, the schedules gave the addresses of only six out of 81 creditors, and at least 19 creditors had not received notice of application for discharge.

In Re Applegate (D.C.) 235 F. 271, 37 A.B.R. 759, the clerk of the court refused to accept specifications of objection to discharge filed within stipulated extended time because no order of extension had been entered but instead entered discharge. Prompt motion to vacate discharge was granted.

In Re Martin (C.C.A.) 38 F.(2d) 629, 15 A.B.R.(N.S.) 617, no petition for discharge was filed and no notice of hearing given.

In re Isidor Klein, Inc. (C.C.A.) 22 F.(2d) 906, 11 A.B.R.(N.S.) 156, relates to composition, and In re Ingrao (D.C.) 40 F.(2d) 946, 15 A.B.R.(N.S.), 735, was an application by a bankrupt to vacate his discharge to permit amendment of schedules to include creditors omitted therefrom. The other cases have even less analogy.

In re Walsh (D.C.) 213 F. 643, 644, 32 A.B.R. 521, a case in this district, has, much analogy, for the ground there urged, as here, was that the creditor did not receive notice. The motion was apparently made within one year. Judge Ray said: "I do not think the court has power to revoke a discharge on the ground that a creditor did not receive his notice, which was duly mailed. * * * Neither do such moving papers set out facts which, if proved, would require a denial of the discharge, and within the cases cited it should appear, before revoking a discharge, that the creditor has sufficient proof or reasonable proof and prima facie sufficient to require a denial of the application for a discharge."

The evidence is that the notice of application for discharge was properly mailed. It will be presumed that it was properly published in the absence of any contention to the contrary.

The weight of authority is that the failure of one creditor out of many to receive the notice, if the affidavit of Boden could be so construed, does not warrant the court in vacating the discharge.

Indeed the presumption that the addressee received a letter properly addressed, sealed, and mailed can hardly be overthrown by such an affidavit as that of Boden. If not overthrown, then the judgment creditor is also guilty of laches which would require denial of its application.

Next is the question of lack of jurisdiction of this court because of the alleged nonresidence of the bankrupt in this district.

The creditor's proof that bankrupt did not reside in Schenectady consists of the Keegan, Eckel, and Jackson affidavits. In his affidavit made October 10, 1935, Keegan says, upon information and belief, that the bankrupt resided at the Hotel Cameron in New York City from February 1, 1933, to December 1, 1934. But he says that his information was obtained from a Mr. Wagner, who was on October 10, 1935,

the manager of the Hotel Cameron, but who was not such manager, nor apparently connected with that Hotel, at any time prior to December 1, 1934. Mr. Wagner showed him a lease which ran from February 1, 1933, to September 10, 1933. Wagner said that the bankrupt continued to reside there under said lease to December 1, 1934. This is clearly hearsay, for Wagner was not then there and could have no personal knowledge. The affidavit, while it speaks of bankrupt's occupying room 15–C at a rental of $90 per month, does not say that Wagner told him that the books of the hotel showed payment of the room rent to December 1, 1934. For all that appears, that may have been the room rent for the lease period expiring September 30, 1933.

Keegan further testified that Mr. Gibbs, who was manager of the Hotel Cameron during the period from February 1, 1933, to December 1, 1934, told him (Keegan) that "mail was regularly delivered to Herman Knepper while he resided at the Hotel Cameron and he frequently took his meals there."

There is no question but that the bankrupt did reside at the Hotel Cameron between February 1, 1933, and about October 1, 1933, and Gibbs' statement that he regularly received mail and frequently took his meals there while he resided there is perfectly true if confined to the period before the fall of 1933. Keegan does not say that Gibbs told him that the bankrupt resided at the Hotel Chatham from February 1, 1933, to December 1, 1934, but merely says that Gibbs was manager during that period.

Keegan further said that he presented to Mr. Gibbs an affidavit which contained "in essence" the information set forth in Keegan's affidavit, but that Gibbs refused to sign because the bankrupt was still (October 10, 1935) residing at the Hotel Brewster. Copy of that proposed affidavit was not attached.

Keegan also says in his affidavit that in the New York City Directory for the years "1933 to 1934" he found the bankrupt listed as president of the Knepper Realty Company, Inc., 3124 Third avenue, but no residence address was given. Keegan also said (October 10, 1935) that Herman Knepper "is listed" in the Manhattan Telephone Directory under "real estate" 10 East Fortieth street and "is also listed" in the Bronx Telephone Directory under "Real Estate," 3120 Third avenue.

The city directory, if issued at any time in 1933 before October 1st, could well have listed the bankrupt in the real estate business in New York and the Bronx, for such was the fact. There is nothing to show that the directory which Keegan inspected was issued in 1934. Directories are usually for one year.

That the bankrupt "is listed" in telephone directories in October, 1935, as having offices in Manhattan and Bronx is evidence only that when that directory was issued he had such offices. It was probably issued in May or June, 1935, which was some time after the bankrupt had again returned to New York.

The affidavit of Eckel, the election commissioner, that the bankrupt was not registered as a voter in Schenectady in 1933 and 1934 has no significance. Bankrupt went to Schenectady about September 1, 1933, and was not entitled to register for the 1933 election. He left Schenectady before the election of 1934. There is no evidence that he registered from the Hotel Chatham or elsewhere in New York during either of these two years.

Finally we come to the affidavit of William H. Jackson, the Schenectady investigator, made on September 27, 1935. He does not say when he made his investigations, but it could hardly have been before September 1, 1935, or before the time when the bankrupt moved in the Supreme Court to discharge the gas company judgment. This was about a year after the bankrupt left Schenectady. He says that the mail carrier who delivers mail in that section told him that the Felsons had moved to 1852 Eastern Parkway about two years before, and that the only other name to which he had delivered mail at that address was a man by the name of Potter during the early part of the year, but that this man had left about six months ago. He also said that he interviewed neighbors in the immediate vicinity and was told "on all occasions that they had never heard of such a man." He does not say that he did or did not call at 1852 Eastern Parkway, nor telephone thereto.

It does not definitely appear that this mail carrier was on this route the latter part of 1933 or any part of 1934, nor how long he had been on this route. Affiant does not state how many neighbors

he interviewed, nor how long they lived there. This section of Schenectady is fairly thickly populated, and possibly there are many changes.

Certainly such negative evidence cannot outweigh the positive statements of the bankrupt, his sister, and his nephew, all of whom lived at 1852 Eastern Parkway, that he resided in that house from the "fall of 1933 to the fall of 1934"; "from September 1933 to the fall of 1934"; "from September 1933 until sometime in the fall of 1934"; that bankrupt had desk room during the period at 523 State street and also received mail there; as well as at 1852 Eastern Parkway.

Mrs. Filson also says that she has been a resident of Schenectady for 29 years; that she has lived at 1852 Eastern Parkway for 11 years and owns the premises. Both she and her son also say that some few weeks before the affidavits (October 14, 1935) some one called on the telephone and asked whether Herman Knepper had lived at that address and was told by the mother that he had for about a year and a half, and by the son was told that Knepper had lived there and was not there then but had returned to New York, but that he (the son) would deliver a message to Knepper. Both say they believe the inquirer was investigator Jackson.

■ The weight of evidence is that the bankrupt was a resident of Schenectady from the fall of 1933 to the fall of 1934. Jurisdiction in bankruptcy then was in the Northern District.

The authorities cited by the creditor to support its contention that the bankrupt was not a resident of this district and that the court had no jurisdiction are lacking in close analogy.

In Re Garneau (C.C.A.) 127 F. 677, 11 A.B.R. 679, creditors moved to dismiss the proceeding for want of jurisdiction in the Southern District of Illinois. The bankrupt admitted that he had moved from St. Louis to the Southern District of Illinois for the purpose of filing his petition in bankruptcy and intended to leave as soon as the bankruptcy proceedings were completed.

In Finn v. Carolina Portland Cement Co. (C.C.A.) 232 F. 815, 37 A.B.R. 449, the bankrupt and two of the three petitioning creditors moved to vacate the petition upon the ground that he was not a resident of Southern Florida where the petition was filed.

In re Mitchell (C.C.A.) 219 F. 690, 33 A.B.R. 463, has no application.

In re San Antonio Land & Irrigation Co., Ltd. (D.C.) 228 F. 984, 36 A.B.R. 512, involved the question whether the principal place of business of a foreign corporation was in New York or Texas.

In Re Elmira Steel Co. (D.C.) 109 F. 456, 5 A.B.R. 484, involuntary petitions were filed in two districts against the corporation. The question was in which district was the principal place of business.

The other cases are also lacking in analogy.

Cases supporting the bankrupt's contention here are of greater weight.

In Re Mason (D.C.) 99 F. 256, 3 A.B.R. 599, upon the return day of the application for discharge a creditor filed specifications of objections alleging that the bankrupt was not a resident and had no principal place of business in the state in which the petition was filed, but was a resident of another state.

The court overruled the objections and granted the discharge, holding that the creditor by notice was bound if he appeared in the proceeding and precluded if he did not appear.

In Re Clisdell (D.C.) 101 F. 246, 247, 4 A.B.R. 95, upon application for discharge objection was made that the bankrupt was not a resident of the district. The court said: "The discharge is opposed upon the ground that the bankrupt was not domiciled within this district for six months, or the greater portion thereof, prior to filing his petition in bankruptcy. This question upon the facts is close and difficult. A similar issue was presented in Re Williams (D.C.) 99 F. 544, with the same result as that reached by the referee. It is unnecessary to decide this question here for the reason that, in the opinion of the court, it cannot be considered in this proceeding. Whether or not the court was right in adjudicating Clisdell a bankrupt, is not now in issue. He has been adjudicated a bankrupt. The petition was sufficient on its face, and nothing appeared in that proceeding challenging the jurisdiction of the court. The opposing creditor appeared and filed his proof of claim and examined the bankrupt before the referee. Here then is a bankrupt duly adjudicated. His petition for a discharge is a separate and distinct proceeding. The court is familiar with no rule of law by which, in such circumstances as are here shown,

objections disputing jurisdiction in the original proceeding can be thus determined collaterally. It is too late. Certainly there is no provision of the bankruptcy law which authorizes such a course. The petition for a discharge rests upon the fundamental proposition that the petitioner has been adjudicated a bankrupt, and the objections which may be interposed and litigated are those pointed out in sections 14 and 29 of the act [11 U.S.C.A. §§ 32, 52]. It would involve the administration of the law in endless confusion if the issue of domicile can be raised in every matter growing out of, or ancillary to, the original bankruptcy proceedings. The question has been recently decided in Re Mason (D.C.) 99 F. 256. * * * The discharge is granted."

In Re Walrath (D.C.) 175 F. 243, 245, the late learned Judge Ray of this district held that the application for discharge is distinct and independent of the prior proceedings, "but the validity of these proceedings cannot be challenged here collaterally. The petitioner has been adjudicated, and jurisdiction established. That judgment stands unimpeached. This is an independent proceeding. In re Clisdell (D. C.) 101 F. 246, 4 A.B.R. 95; In re Mason (D.C.) 99 F. 256, 3 A.B.R. 599. Sections 14 and 29 state the objections which may be interposed and litigated here. Jurisdiction and the validity of the prior proceedings are not included."

In Re Greer (D.C.) 248 F. 131, objection made to discharge on the ground that the court had no jurisdiction because the bankrupt was not a resident of the district in which the petition was filed was held not to have been "raised in time."

In Re Goodale (D.C.) 109 F. 783, 6 A.B.R. 493, objection to discharge was made upon the ground that the bankrupt was a nonresident of this state. The court said: "Even if the allegation were that he was not domiciled within this district for six months prior to filing the petition it could not be considered in this proceeding."

While the objecting creditor appeared and filed his claim in the Mason and Clisdell Cases, supra, there is nothing to indicate that the creditor filed any claim in the Goodale Case or appeared, except upon the application for discharge to raise the question of residence and jurisdiction.

In the case at bar the objection is raised over a year after the discharge.

Allen v. Thompson (D.C.) 10 F. 116, points out the unfortunate results of permitting the jurisdiction of the court to be raised after discharge is granted by one who was scheduled as a creditor, was given notice and thereby made a party.

In cases not arising under section 15, the court should be moved only to vindicate its own rights and to protect against fraud and deception. In re Lansley, 15 F.(2d) 471, supra.

The petitioner does not show by its moving papers that the processes of the court have been abused, nor that fraud or deception has been practiced upon creditors or the court. Nor does the petitioner show any statutory ground upon which the bankrupt could have been denied discharge had it been raised in time.

At the most it is a debatable question whether the Northern or Southern District had jurisdiction. The bankrupt was advised by counsel that jurisdiction lay in the Northern District. Assuming the facts stated to counsel to be true upon which the opinion was given, the bankrupt is not guilty of fraud or contempt of this court or abuse of its process. Only in case he stated wholesale untruths as to his residing in Schenectady can there be cause for the court to act, and even then it is not free from doubt under the doctrines laid down in Allen v. Thompson and the Clisdell and Goodale Cases.

The statements of the moving affidavits as to bankrupt's residence at the Hotel Chatham in New York City are not greatly inconsistent with his domicile in Schenectady during the six months prior to filing the petition. All the affidavits may be true.

Though there are about 200 creditors of the bankrupt, none of them except the gas company have raised the question of residence of the bankrupt, or of jurisdiction or of the good faith of the bankrupt, and many of them have claims much larger than that of the gas company. No others claim not to have received notices of the adjudication and of application for discharge.

Many of the claims, several in judgment, arise from indorsement by the bankrupt of the obligations of real estate corporations of which he was probably the owner.

If it were true, as the creditor contends, that he was either residing in New

York City during the six months period or that city was his principal place of business during that period, the creditors could, had they so desired, have had the estate of the bankrupt administered in the Southern District where his principal business was being transacted, and where, according to the contention, most of the creditors were, by filing an involuntary petition in the Southern District or obtaining a transfer to that district. In re American Bond & Mortgage Co. (D.C.) 58 F.(2d) 379, 382.

See, also, Royal Indemnity Co. v. American Bond & Mortgage Co., 289 U.S. 165, 169, 170, 53 S.Ct. 551, 77 L.Ed. 1100.

That the creditors did not do so evidences their satisfaction that the bankruptcy proceedings should be conducted in the district in which the voluntary petition was filed.

There must come a time when a discharge in bankruptcy is irrevocably a discharge. Section 15 fixes one year as the limit for attacking discharge thereunder. While the burden is on the bankrupt to show the jurisdictional residence if the question is raised ad limine, or perhaps promptly thereafter, one who, after one year, attacks it on the limited grounds set forth in the Lansley Case must be free from laches and make a strong, clear, and convincing showing of fraud or abuse of the court's processes before a court should act.

The creditor has been unable to make such a showing, nor has it made a showing sufficient to warrant a reference.

It is quite true that bankrupt was in business in New York City, came to Schenectady, went through bankruptcy, and returned to New York apparently to re-engage in the same kind of business. He says that he went to Schenectady to reside and to start anew, and, finding little business there, went back to New York about a year later.

Under depression conditions that is not improbable. During that period the real estate business was not good anywhere. At any rate, the controlling fact is residence in Schenectady for the statutory period before filing petition. The creditor has not shown this not to be a fact, nor has he shown any reason why the bankrupt was not entitled to discharge, nor any right to attack the discharge or the jurisdiction.

The motion must be denied.