Rollins *v.* Clay.

---

ROLLINS *versus* CLAY & *al. ex'ors*

A corporation is not dissolved by merely ceasing to exercise its powers.

A corporation, having authority to maintain a boom, took a lease of some flats and shore, and there erected a boom, extending into the river, for catching and securing lumber. It was made of piers, logs and chains. — *Held*, that by a sale of "the boom and piers," on execution against the company, nothing passed but the piers, logs and chains, and that the purchaser took no right in the leasehold.

Though it was by wrong that the reversioner regained possession of land, which was under lease, yet, he may maintain trespass against a mere stranger to the lease, who has invaded his possession.

Directors of a corporation, unless specially empowered, have no authority to make sale of any portion of its estate, essentially necessary for the transaction of its customary business.

ON REPORT from *Nisi Prius*, HOWARD, J. presiding.

Trespass *quare clausum fregit*, brought against the testator to recover damages for taking away the plaintiff's boom. The general issue with brief statement was pleaded.

Documentary and oral evidence was introduced by the parties. The case was then submitted to the full Court with authority to draw inferences of fact, and to appoint an assessor of damages, if there should be any occasion for an assessment.

The evidence showed, that in 1832, Mrs. Olive Rollins leased to Usher and Weston, acting in behalf of the Kennebec Boom Corporation, the shore and flats pertaining to her upland farm, for the purpose of catching, and booming logs and other lumber for the term of thirty years, yielding a rent of twenty dollars yearly, but reserving to the corporation a right to surrender the lease after the first year.

In 1835, she conveyed the farm to the plaintiff, " reserving, however, for the time being, the flats and shore which I have leased to the Kennebec Boom Company." She also, on the next day, assigned the lease to the plaintiff.

In 1832, the corporation acting under their lease, erected a boom on the flats and in the tide waters of the river, and occupied it until 1842. In the spring of that year all the right, title and interest of the corporation " *in and to said boom and piers*," was sold on execution to Henry T. Clay, who has since continued to occupy the boom.

In Feb'y, 1847, the plaintiff notified Henry T. Clay and one Lancaster, to discontinue their occupation of the shore and land. In April of that year, the plaintiff erected a boom within the boom occupied by Clay, of nearly the same shape and size of it, and extending the whole width of the plaintiff's land. This inner boom collected and retained nearly all the logs which would have come into the larger boom. In June of the same year the testator, by direction of Henry T. Clay, removed the inner boom. It is to recover damage for that removal, that this suit was brought.

Subsequent to the suit, Usher and Weston, by separate instruments, released to the plaintiff all their respective rights in the premises.

In May 22, 1847, Samuel E. Crocker and Elijah Jackson, acting as directors of the corporation, licensed Henry T. Clay and said Lancaster, for a term till countermanded, to occupy the boom with the shore and privileges, secured to the corporation by Mrs. Rollins's lease.

Crocker and Jackson were members and a majority in number of the last board chosen by the corporation, and their election was made more than five years before the alleged trespass. During all that time, the corporation had ceased to do business, and they never voted to authorize any sale or conveyance of their interest in the shore or flats. Some of the particulars in the evidence are recited and commented upon in the opinion, given by the Court.

*Bradbury*, *Baker* and *Whitmore*, for the plaintiff.

The title to the *locus in quo* is in the plaintiff. Neither the executor nor Henry T. Clay, under whom he professed to act, had any right to maintain any boom in front of the plaintiff's land.

I. Whatever right the corporation had under the lease was abandoned. The lease reserved the right to abandon after one year. From 1842 to 1847 they had no occupation. Hence a resistless inference, that they had availed themselves of the reservation, and given up the contract.

II. Even if the lease had not been abandoned by the company, Henry T. Clay had no right under it. The officer's sale to him was ineffectual. It was merely of a chattel, the boom sticks and chains. It did not purport to convey the franchise or any thing held by the lease. H. T. Clay in no way connects himself with the lease.

III. Henry T. Clay could take no available interest under the assignments of Usher and Weston.

1. They had no rights ; the lease was not to them, but to the corporation.

2. If they had rights, their assignment of them to H. T. Clay and Lancaster was after the trespass.

IV. The attempted license given by Crocker and Jackson was unavailing.

1. It amounted to a transfer of property which was essential to all future and further operations of the company. For such a transfer, no vote of authorization was ever passed, and no ratification was given. The power to make such a transfer is not within the incidental powers pertaining to directors.

2. The corporation, at the time of the giving of that license, had long been dissolved.

3. Crocker and Jackson had long ceased to be directors. Their appointment was but an annual one, and it took place several years before they assumed to make the license.

V. If, without claiming under the lease, Henry T. Clay sets up a tenancy under the plaintiff, that relation was terminated by the notice to quit, given February 1, 1847.

In support of these positions the following authorities were cited. 17 Mass. 1; 1 Pick. 45; 23 Pick. 216; Story on Agency, chap. 6.

*Evans*, for the defendants.

The plaintiff had no title. 13 Metc. 523.

The corporation had a good title for thirty years under the lease. The deed, under which the plaintiff claims, exhibits that fact. The rights of the corporation all passed by the officer's sale. A term for years is a chattel. *Gay, ex parte*, 5 Mass. 419.

By R. S. chap. 114, sect. 46, not only the franchise but all other corporate property is attachable on *mesne* process.

By R. S. chap. 117, sect. 2, all chattels real and personal, liable at common law to attachment, and not exempted, &c. may be sold on execution. Comyn's Digest, tit. Execution, (chap. 4.) " What things may be taken."

" So he may extend and sell a term of years." 8 Coke, 171, a.

Erections made on another's land by his consent, are personal property to be sold as other personal chattels are.

By the terms of the lease itself, it was contemplated that other persons might hold under the corporation.

The expression " or any person under them" is twice used in it.

If any irregularity or want of form in levying the execution had taken place, which is denied, nobody but the corporation, or some person claiming under them, could take advantage of it.

Objections to the regularity of a sale of property on execution cannot be raised by strangers to the execution. *Smith* v. *McGowan,* 3 Barb. Sup. C. Rep. 404.

The corporation acquiesced in H. T. Clay's title, and surrendered possession.

The plaintiff also acquiesced and received rent for several terms from H. T. Clay. The corporation never abandoned. It had no right to. The right reserved was only a right to surrender. That could be done only upon giving notice. The sale by force of law will not be pretended as an abandonment.

The boom, erected within the boom of Clay, was a private nuisance, which he had a right to abate.

SHEPLEY, C. J. — Olive Rollins, being the owner of a farm adjoining the Kennebec river on March 21, 1832, leased "all the shores and flats of her said land" for the term of thirty years to the Kennebec Boom Corporation for an annual rent agreed to be paid by Ellis B. Usher and Benjamin Weston, jr., who represented the corporation, and with whom the contract was made. On March 20, 1835, she conveyed that farm to the plaintiff, "reserving however for the time being the flats and shore on the Kennebec river, which I have leased to the Kennebec Boom Company, about three years ago, for the term of thirty years." On the following day she assigned that lease to the plaintiff, and on the twenty-fourth day of the same month it was recorded in the registry of deeds. The plaintiff having acquired title to the farm, with a reservation of the title of the lessees, and taken an assignment of that lease can have no right to occupy the flats leased, while the lease is legally subsisting.

It contained a provision, that the lessees should have "the privilege of delivering up said premises and privileges at any time after the expiration of the first year." There is testimony to prove, that the plaintiff stated that one year's rent remained unpaid before this contest arose. There is no testimony to prove, that any entry had been made, or other act done to terminate the lease for that cause. The notices given by the plaintiff to Henry T. Clay, and to Daniel Lancaster could have no such effect. The lease or rent is not alluded to in them.

The Kennebec Boom Corporation having been authorized by special acts of the legislature, placed a boom, called the Brown's island boom, upon the flats and in the waters of the river during the year 1832, and continued to occupy it until the spring of the year 1842.

Parker Sheldon says: — "I understood all the personal property of the corporation was sold about 1842, to pay the debts of the corporation, and from that time I considered the shore contract abandoned, and the company defunct."

A corporation is not dissolved by ceasing to exercise its powers. Nor because its stockholders and directors may consider it to be "defunct." Nor will the lease be terminated, because the witness considered the shore contract abandoned.

There is no proof that the corporation, or any person acting in its behalf ever terminated the lease, by delivering up the premises. On the contrary the flats appear to have been occupied in part by the boom, and it may be inferred from the plaintiff's declaration, that the rent due by the lease had been paid until within a year or two of the time, when this contest arose.

The releases made by Ellis B. Usher and Benjamin Weston, jr., to the plaintiff, can have no effect upon the rights of the parties. They were not executed, until after the supposed trespass had been committed. Those releases do not purport to convey any rights of the corporation. Certain agreements contained in the lease appear to have been made with Usher and Weston, acting in behalf of the corporation, but the flats

are expressly leased to the corporation, and to it is reserved the right to terminate it by delivering up the premises.

There is, therefore, no evidence presented to prove, that the lease was not a valid and existing contract; and the corporation had by virtue of it the exclusive right to occupy those flats, unless it had in some other mode parted with or been deprived of that right.

Henry T. Clay claims to have been the owner or assignee of the term, and to have directed Richard Clay, (deceased,) to cut away or remove the boom placed on those flats by the plaintiff. He introduces in proof of his title, copies of a judgment, and of an execution issued thereon in favor of Charles Lawrence, against the Kennebec Boom Corporation, with a copy of the return made on that execution by Enoch Marshall, a deputy of the sheriff, of a sale by him to Henry T. Clay, of "Brown's island boom and piers." That sale, made on May 5, 1842, appears to have been regular and legal. The officer made out a bill of sale of the boom, and delivered it to the purchaser.

It is contended in defence, that this sale of the boom and piers conveyed the right of the corporation to occupy the flats, on which the boom' had been partly placed and maintained. It is said, that by a boom is meant the space enclosed by the piers, chains and logs. That the materials are designated as boom pieces, piers and chains. This signification of the word boom cannot be admitted. As explained by lexicographers, and as used in acts of legislation, the word means the spars or logs, and chains, and other fixtures used to keep them in place, extending wholly or partially across a river or other body of water to obstruct the floating of objects in those waters. The word has not a meaning sufficiently broad to embrace a leasehold estate for years. Nor does there appear to be any sufficient reason to conclude, that it was used by the officer to include it, or with the expectation that it would include it. No allusion is made to it by the officer in his seizure, return of sale or conveyance of the boom and piers. These were visible objects; the term was not; and there is no proof that its exist-

ence was known to the officer. Nothing can pass by such a sale, which is not named, described, or involved in the description of what is sold.

It is said that advantage cannot be taken by a stranger of any irregularity or want of form in making the sale. Such is not the defect here presented. The objection is not that there were irregularities or informalities in making the sale, but that the leasehold term of years was not in fact sold.

The defendants present a conveyance or assignment of it, purporting to have been made on May 22, 1847, by Samuel E. Crocker and Elijah Jackson, as directors of the corporation.

They appear to have been two of the three last directors chosen by the corporation. By the testimony of Sheldon, they appear to have been chosen at least five years before they executed that assignment. The corporation during that time had ceased to do business. The directors of a corporation are authorized, by virtue of their office, to transact its ordinary and customary business, unless the charter or by-laws otherwise determine. But they are not authorized, without some special authority, to make sale of that portion of its estate or property essentially necessary to be retained to enable it to transact its customary business. This term existing by lease appears to have been of that character. The directors do not appear to have had any special authority to make the sale. Considering the time which had elapsed, since their election, and that the corporation had ceased to do business during that time, and that the property conveyed was necessary for the transaction of its customary business, the conclusion must be that no title was acquired by that conveyance.

The result is, that there was an outstanding term held by the Kennebec Boom Corporation, to which neither of these parties has exhibited any legal title. The flats do not appear to have been occupied by that corporation for several years. If the plaintiff received rent from Henry T. Clay, who occupied without title, their relations were terminated by the notices to quit, given on February 1, 1847, before the plaintiff's boom was removed in the following month of June.

The plaintiff was the owner of the flats subject to the lease. He appears to have made a peaceable entry, and to have placed his boom upon them. He was thus in the actual possession of them, when his boom was cut away. He was liable to be treated as a trespasser, and to be ousted by the corporation, but not by a stranger to the title. If he had commenced a real action against the owners of Brown's island boom, as the occupants of the flats, they being strangers to it, could have set up that outstanding term to disprove his actual seizin, but for no other purpose, to prevent a recovery. *Walcot* v. *Knight*, 6 Mass. 418; *Bailey* v. *March*, 3 N. H. 274; *Shapleigh* v. *Pillsbury*, 1 Greenl. 271; *Stanley* v. *Perley*, 5 Greenl. 369; *Green* v. *Watkins*, 7 Wheat. 27.

If a person should lease his house for a term of years, and finding it unoccupied should enter during the term and place his furniture in it, a stranger to the interests of the lessee could not enter and injure that furniture without being a trespasser; and the owner of the house, having the actual though not rightful possession of it, might maintain trespass *quare clausum* against such stranger. So the plaintiff, being the owner of the flats, and having entered into the actual possession, and placed his boom upon them, may maintain such an action against one who, being a stranger to that title, destroyed his boom. But the income and profits of those flats belonged to the lessees and not to the plaintiff; and he is entitled to recover only for the damage done to the boom, which was his own property.

If the parties do not agree upon the amount, an assessor will be appointed to ascertain them.

*Defendants defaulted.*