### VENNER v. SOUTHERN PAC. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 42.

**1. Removal of causes ⬅⇒48—Cause held removable on the ground of separable controversy.**

A suit by a stockholder against the corporation and another corporation, each a citizen of a different state from complainant, for the rescission of a contract between them under which complainant's corporation had transferred property to the other, and also against the directors of both corporations, to hold them accountable for any loss sustained by complainant's corporation through such contract, *held* to involve two separate controversies, the first of which could be determined between complainant and the corporations alone, and the cause *held* removable by either or both the corporations under Judicial Code, § 28, as amended by Act Jan. 20, 1914 (Comp. St. § 1010), without regard to the citizenship of the remaining defendants.

**2. Removal of causes ⬅⇒31—Joinder of unnecessary parties cannot defeat right of removal.**

To a suit by a stockholder against the corporation for rescission of a contract made by it, its directors are not necessary parties, and the fact that they are joined as defendants in their official capacity only does not defeat the corporation's right of removal on the ground of diversity of citizenship, though they are citizens of the same state as complainant.

**3. Railroads ⬅⇒18—Distribution of oil properties within Hepburn Act, held legal.**

The directors of the Southern Pacific Company, as a means of disposing of its oil lands, the retention and operation of which had been made unlawful by Hepburn Act June 29, 1906, § 1 (6), being Comp. St. § 8563 (6), adopted a plan for their distribution among the company's stockholders by the organization of an oil company and offering its stock to its own stockholders at a price much below its actual value, with the privilege to each stockholder of buying his proportion of the stock or of selling his right thereto, the proceeds of the stock being used to purchase and pay the railroad company for the lands at a fixed price, which was less than one-third of their estimated value, and for working capital. *Held,* that such action of the directors was not ultra vires, but within the powers conferred on them by the charter to acquire and deal in all kinds of stocks, and to sell all kinds of personal and real property to the amount they might determine, nor was it illegal as infringing the rights of stockholders; it appearing that the right of any stockholder to purchase his proportionate share of the stock of the oil company was valuable and readily salable in the market.

⬅⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Corporations ⇐⇒393—Courts will not interfere with discretion of directors on questions of corporate management or policy.**

In the absence of usurpation, fraud, or gross negligence, courts of equity will not interfere, at the suit of a dissatisfied stockholder, merely to overrule or control the discretion of the directors, within the limits of their authority, on questions of corporate management or policy.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Clarence H. Venner against the Southern Pacific Company and others. Decree for defendants, and complainant appeals. Affirmed.

Certiorari denied 257 U. S. ——, 42 Sup. Ct. 461, 66 L. Ed. ——.

The plaintiff is a citizen and resident of the city and state of New York. The defendant, the Southern Pacific Company, hereinafter called the Southern Company, is a corporation organized under the laws of the state of Kentucky. The plaintiff is the owner and holder of 200 shares of the capital stock of the Southern Company, of the par value of $100 each. The outstanding capital stock of the Southern Company is approximately $302,000,000, all common stock. The company also has outstanding approximately $45,539,000 of 5 per cent. bonds, which are convertible into stock at par.

The Pacific Oil Company, hereinafter called the Oil Company, also named as a defendant, is a corporation organized under the general corporation laws of the state of Delaware, with a capital stock of 3,500,000 shares, of no par value. The individual defendants are directors of one or both of the defendant corporations. The defendants Bliss and Jarvie are citizens of the state of New Jersey. The defendant Kruttschnitt is a citizen of the state of Connecticut. The defendant Rea is a citizen of the state of Pennsylvania, and the defendant Shoup is a citizen of the state of California. The defendants De Forest, Harding, Harkness, Huntington, Loree, Spence, Sproule, Swenson, Underwood, Goelet, and Mills are citizens of the state of New York. All the individual defendants above named are directors of the Southern Company. The defendants Alexander, Peabody, and Schiff are citizens of New York; the defendant Caldwell is a citizen of the state of New Jersey. The defendants Alexander, Peabody, Schiff, and Caldwell, together with the previously named individual defendants, De Forest, Rea, Swenson, and Shoup, are directors of the Oil Company, elected pursuant to the plan hereinafter referred to, and constitute at least a majority of the board of directors of that company.

The plaintiff commenced this action in the Supreme Court of the state of New York, and in the county of New York, suing in behalf of himself. as a stockholder of the Southern Company, and on behalf of all other stockholders thereof, similarly situated, who may join with the plaintiff and contribute to the expenses of this suit. No other stockholder, however, has joined him in the suit. The suit grows out of the separation of the Southern Company's oil properties from its railroad properties, and the distribution of the former to its stockholders; such separation being necessary to enable the Southern Company to conform with the commodities clause (section 1, cl. 6) of the Hepburn Act (Comp. St. § 8563(6)), and which makes it unlawful for any railroad company to transport in interstate commerce any article or commodity manufactured, mined, or produced by it, or under its authority, or which it may own in whole or in part, or in which it may have any interest, direct or indirect, except such articles or commodities as may be necessary and intended for its use in the conduct of its business as a common carrier.

The complaint attempts to set forth two causes of action—one by Venner directly against the two defendant corporations, to enjoin or rescind the separation and distribution above mentioned, depending upon whether or not the separation and distribution had been consummated; and the other a derivative suit by Venner, through the Southern Company, seeking to hold the

⇐⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
279 F.—53

other defendants liable to the Southern Company for any loss which it may have sustained by reason of the consummation of the plan for the separation and distribution of its oil properties. It appears that the Oil Company purchased the oil properties from the Southern Pacific Land Company, one of the Southern Company's subsidiaries, and that the consideration for the sale of the oil properties was paid in cash. The true facts are fully set forth in the circular letters sent by the Southern Company to the holders of its stock and convertible bonds.

Letters stated that the Oil Company would be organized under the laws of the state of Delaware with a capital stock of 3,500,000 shares, of no par value, for which the Southern Company would subscribe at $15 per share; that from the amount so realized, namely, $52,500,000, the Oil Company would purchase from the Southern Pacific Land Company for $43,750,000 about 259,000 acres of oil lands in California and 200,690 shares of the capital stock of the Associated Oil Company; that the entire capital stock of the Land Company is owned by the Southern Company, and that by the sale of these properties the Land Company would thus receive $43,750,000 in cash and the Oil Company would retain $8,750,000 as working capital; that the holders of the capital stock of the Southern Company, registered as such at the close of business on January 14, 1921, would be given the right to purchase at $15 per share, payment to be made therefor on or before March 1, 1921, one share of stock of the Oil Company for each share of the Southern Company's stock so held; that the stock of the Oil Company was fixed at 3,500,000 shares, to correspond as nearly as might be to the total number of shares of Southern Company's stock outstanding, together with the shares reserved for the conversion of its convertible bonds; that warrants would be issued to the stockholders as soon as possible after the closing of the books on January 14, 1921, specifying the amount of stock of the Oil Company which each stockholder was entitled to purchase; that on the back of the warrants would be two forms, one to be filled out and signed by the stockholder, if he desired to purchase the stock, and the other to be filled out and signed by the stockholder in case it was desired to dispose of the privilege of purchase; and, finally, that all of the warrants not returned to the treasurer of the Southern Company on or before March 1, 1921, with payment in full for the stock represented thereby, would be void and of no value.

The complaint also alleges that no stockholders' meeting of defendant Southern Company had been held or called for the purpose of authorizing or ratifying the plan, and that the plaintiff had not in any wise consented thereto, but, on the contrary, shortly after its promulgation, and after informing himself of the meaning and effect of same, he sent to the defendant company and its directors on the 10th day of December, 1920, a letter duly protesting against said plan and the action taken by the board of directors of the Southern Company in respect thereof, but the defendants refused to abandon said plan and insisted upon carrying the same into effect.

The complaint also alleges that the plaintiff is unwilling to subscribe to the stock of the said new corporation, to wit, the Oil Company, and unless he does so subscribe, in case the said proposed plan is carried into effect as intended, he will be deprived, as a stockholder of the defendant Southern Company, of all right and interest in or to certain property in which he is now a part owner as a stockholder of the Southern Company, and which property and the title to the same is to be wrongfully and illegally transferred from the said Southern Company, or its subsidiary, the Southern Pacific Land Company, to the Oil Company and to the stockholders thereof, and that the completion of the said proposed plan will deprive the plaintiff and other stockholders, who are unwilling to subscribe to the stock of the said new corporation, of his and their interest as stockholders in the Southern Company, in and to said property, by force against his and their will, without due process of law, and without adequate compensation therefor. It is alleged that the plan which the defendants have decided to consummate is unjust, illegal, and ultra vires.

An injunction is asked to restrain the defendants from carrying their plan into effect, and that, in the event of the plan being consummated dur-

,ing the pendency of the action, a judgment may be entered, setting aside and declaring null and void all deeds of conveyance, transfers, or assignments of the property involved, and that the Oil Company be ordered to reconvey to the Southern Company or its subsidiary, the Southern Pacific Land Company, the said properties. It is also asked that the Oil Company and its directors and the directors of the Southern Company be held liable for all loss or damage which may be sustained by the Southern Company or its stockholders, and that they be directed to account to the Southern Company for all loss or damage sustained.

Elijah N. Zoline, of New York City, for appellant.

Humes, Buck & Smith, of New York City (J. P. Blair and Gordon M. Buck, both of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MACK, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This is a stockholders' suit, which, having been originally commenced in the Supreme Court of the state of New York, was removed into the District Court of the United States for the Southern District of New York, on January 5, 1921, under an order from the state court, which was obtained by the defendants the Southern Company and the Oil Company. Thereafter the plaintiff obtained from the District Judge an order requiring the defendants above named to show cause why the action should not be remanded to the state court. In due time the motion to remand was heard and denied. The refusal to remand is one of the errors assigned. Thereafter a motion was made to dismiss the complaint upon the ground that there is insufficiency of fact to constitute a valid cause of action in equity. After a hearing upon that motion District Judge Knox filed a carefully considered opinion and dismissed the complaint for want of equity. This dismissal of the bill is also assigned as error. And the bill was also dismissed at the plaintiff's cost. This is likewise assigned as error. These various assignments will be considered in their order.

[1] The present suit is brought by a citizen of New York, who sues a Kentucky corporation, in which he is a stockholder, and a Delaware corporation, and certain individual defendants, who are directors of one or both of the defendant corporations, some of whom are citizens of the same state of which the plaintiff is a citizen. It is evident, therefore, that the suit is not removable from the state court of New York, in which it was commenced, unless there exists in the suit a separate and distinct cause of action, on which a separate and distinct suit might properly have been brought, and complete relief afforded as to such cause of action, with all the parties on one side of that controversy citizens of different states from those on the other. Yulee v. Vose, 99 U. S. 539, 25 L. Ed. 355; Hyde v. Ruble, 104 U. S. 407, 409, 26 L. Ed. 823; Fraser v. Jennison, 106 U. S. 191, 1 Sup. Ct. 171, 27 L. Ed. 131.

The suit has been removed on the petition of the two defendant corporations, upon the theory that the complaint sets forth two causes of action—one against the corporations, either enjoining them from carrying out the plan they are alleged to have adopted, and which involved

a transfer of certain properties by the Southern Company to the Oil Company, or rescinding it, if already consummated; and the other seeking to hold the Oil Company and the individual directors liable to the Southern Company for any loss which it may have sustained by reason of the consummation of the plan. It is admitted that the plan has been consummated, so that the former cause of action is to be regarded as one for rescission. To that cause of action it is claimed that the individual defendants are not necessary parties, and that a decree against the two corporate defendants would be binding upon their respective directors and other officers, and would be equally effective without their presence as parties. In other words, the claim is that there are two separable causes of action stated in the complaint, and that in the first cause of action it is brought by a citizen of New York against a corporation which is a citizen of Kentucky and a corporation which is a citizen of Delaware as the only necessary parties defendant, and that such a suit is properly removable.

Act March 3, 1911, c. 231, § 28, as amended by Act Jan. 20, 1914, c. 11, provides for the removal of suits from state to United States District Courts. That section of the Code, after providing for the removal of suits of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made under their authority, provides as follows:

"Any other suit of a civil nature, at law or in equity, of which the District Courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any state court, may be removed into the District Court of the United States for the proper district by the defendant or defendants therein, being nonresidents of that state. And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the District Court of the United States for the proper district." Comp. Statutes of U. S. (Annotated) vol. 1, pp. 841, 842.

A suit may, consistently with the rules of pleading, embrace several distinct controversies, and where it does involve such controversies, to entitle a party to a removal of the suit into a federal court, it is necessary that there should exist in the suit a separate and distinct cause of action in respect to which all the necessary parties on one side are citizens of different states from those on the other. Hyde v. Ruble, supra; Fraser v. Jennison, supra; Ayres v. Wiswall, 112 U. S. 187, 5 Sup. Ct. 90, 28 L. Ed. 693; Geer v. Mathieson Alkali Works, 190 U. S. 428, 432, 23 Sup. Ct. 807, 47 L. Ed. 1122. In Hyde v. Ruble, supra, Chief Justice Waite, speaking for the court, referring to the clause of the statute providing for the removal of a suit involving a separate controversy between citizens of different states, said:

"To entitle a party to a removal under this clause there must exist in the suit a separate and distinct cause of action in respect to which all the necessary parties on one side are citizens of different states from those on the other."

The separability of a controversy depends upon whether or not the liability sought to be enforced against the defendants is several or joint. In the case of an action against two joint tort-feasors there is no sepa-

rate controversy, even though the plaintiff might, at his option, have sued one of them separately. In such a case, if the plaintiff elects to treat the cause of action as joint, no one of the defendants can treat the suit as against him as severable for the purpose of removal. Chicago, Rock Island & Pacific Railway Co. v. Dowell, 229 U. S. 102, 33 Sup. Ct. 684, 57 L. Ed. 1090. But the present suit is not one to recover damages for a tort. In such a case there can be no removal to the federal court, if any one of the defendants is a resident of the same state as the plaintiff. Cincinnati, New Orleans & Texas Pacific Railway Co. v. Bohon, 200 U. S. 221, 26 Sup. Ct. 166, 50 L. Ed. 448, 4 Ann. Cas. 1152; Chicago, Burlington & Quincy Ry. Co. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. 521; Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart, 227 U. S. 184, 33 Sup. Ct. 250, 57 L. Ed. 473.

The same is true when the action is against the defendants jointly liable upon a contract. Louisville & Nashville R. Co. v. Ide, 114 U. S. 52, 5 Sup. Ct. 735, 29 L. Ed. 63; Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161, 29 L. Ed. 331; Core v. Vinal, 117 U. S. 347, 6 Sup. Ct. 767, 29 L. Ed. 912; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. 730, 29 L. Ed. 899. And the present suit is not one brought upon contract. And when the defendants are liable severally, a defendant who is a resident of a different state from the plaintiff may remove. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514. So, where there is a controversy between a plaintiff and one or more defendants who are residents of a different state from the plaintiff, the case may be removed, even though there is another cause of action included in the suit to which the defendant or defendants are necessary parties jointly with another defendant or defendants residing in the same state as the plaintiff. Geer v. Mathieson Alkali Works, supra.

We think the case of Geer v. Mathieson Alkali Works is decisive upon the question now under consideration. That suit was in equity, and was commenced in the Supreme Court of the state of New York to set aside a conveyance made by the Mathieson Alkali Company to the Castner Electrolytic Alkali Company. In that case, as in this, the suit was brought by a stockholder against his corporation, and another corporation which had received a conveyance from it, and against the corporate directors. The bill in that case, as in this, alleged that the conveyance was ultra vires, and that the directors had conducted the affairs for their own interests, and had confederated and conspired fraudulently to dispose of and do away with the property of the corporation by means of the conveyance complained of, and it asked for a rescission of the conveyance and for an accounting by the directors, who were made individual defendants, and for the payment by them to his corporation of such damages as it had sustained. The relief prayed against the directors was that they—

"may be compelled to account as agents and trustees of the said company for all their acts and doings in the premises above set forth, and that they may severally and respectively be adjudged and required to make good and pay to the said Mathieson Alkali Works and to the plaintiffs all loss and damage caused by their wrongful conduct in the premises as hereinabove set forth."

It also asked that the directors be enjoined from disposing of the corporate property. The court in that case held that the directors were nominal or proper parties, but were not necessary or essential parties, and that the case was removable, and that the motion to remand was properly denied. That case is not distinguishable from the case now before the court.

It is said by counsel for the plaintiff that the Geer Case has not been followed by the Supreme Court in the later cases in that court. It is · pointed out that in Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Bohon, Adm'r, supra, Mr. Justice Day said:

"A separable controversy must be shown upon the face of the * * * declaration, and * * * the defendant has no right to say that an action shall be separable which the plaintiff elects to make joint."

But that was said in an action against joint tort-feasors, where the plaintiff had a right to sue both defendants jointly, and in that class of cases there is, of course, no right of removal. And in Chicago, Burlington & Quincy R. R. Co. v. Willard, supra, the court again held that a defendant could not say that an action should be several, if the plaintiff had a right, and so declared, to make it joint, and that to make it joint was not fraudulent, if the right to do so existed, even if the plaintiff did so to prevent removal. But that, also, was a tort action against joint wrongdoers, where the law gave the plaintiff an absolute right to sue either or both of the defendants at his option. So in Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart, supra, it was held that on the question of removal the court need not consider more than whether there was a real intention to get a joint judgment; but that, like the two preceding cases, was an action against joint tort-feasors.

The plaintiff, in support of his assignment of error based on the denial of his motion to remand, relies chiefly upon the case of Pollitz v. Wabash Railroad Co., 176 Fed. 333, 100 C. C. A. 1. That case is clearly distinguishable from the case at bar. In that case a stockholder in the railroad company brought suit, claiming that a plan adopted by the railroad company for the issue of new securities in exchange for $30,-000,000 of its outstanding debenture mortgage bonds was illegal, and praying that it might be declared illegal and void, and that the defendants be ordered to redeliver the securities, or in default of so doing be ordered to pay into the treasury of the company the new bonds and stocks, etc., which they had received in exchange for the debenture bonds. In that case all of the defendants, other than the railroad company, were residents of the same state as the plaintiff; so that, if any of them were necessary parties to the suit for a rescission, the cause could not be removed to the federal court, and it is not difficult to see why the Metropolitan Trust Company, one of the defendants in that case, was a necessary party, as it had received a large part of the new securities. It was a necessary party to that suit, in the same way that the Oil Company is a necessary party to the suit now before the court, inasmuch as it is in possession of the property whose reconveyance is sought. No claim is made that the Oil Company is not a necessary party to the suit for rescission. But both the Southern Company and the Oil Company are nonresident corporations, while the plaintiff

is a citizen of New York. If the Oil Company were a New York corporation and a citizen of the same state with the plaintiff, there might be an analogy between this case and the Pollitz Case.

The case of Central R. Co. of N. J. v. Mills, 113 U. S. 249, 5 Sup. Ct. 456, 28 L. Ed. 949, does not support the plaintiff's contention, although it is said to be directly parallel with the one at bar. On the contrary, it is plainly distinguishable. In that suit the stockholders in a New Jersey corporation brought suit against that corporation, and a Pennsylvania corporation, and the individual directors. It is enough to say that in that case the New Jersey corporation was a necessary party, and, the plaintiffs being citizens of New Jersey, the suit on that account could not be removed into the Circuit Court of the United States for the District of New Jersey, and if, in a suit to enjoin or rescind, the directors are made parties defendant, it is quite immaterial as to that suit that the directors were joined along with the corporation. As respects that phase of the matter no personal demand is made against the directors. Whatever personal demand is made relates to the matter of the accounting, which is involved in the other and distinct cause of action, and does not affect the question as to rescission, as is clearly shown in the Geer Case.

[2] The fact that the directors are made parties to the suit is unimportant, if no personal demand is made against them, and it is only in their relation to the company, and in the official position that they occupy toward the company, that any one of them is made a party. If no relief is sought from them in their individual capacity, and an injunction is simply asked to restrain them merely from doing or not doing what their official relation to the company alone enables them to do or to refrain from doing, they are not necessary parties, but are mere nominal defendants, and the plaintiff by joining them with the corporation cannot deprive it of any right which it would otherwise have in respect to removing the cause from a state court into a federal court because they happen to be citizens of the same state with the plaintiff. Hatch v. Chicago, Rock Island & Pacific Railroad Co., 6 Blatchf. 105, Fed. Cas. No. 6,204. And the same principle applies where the question, as here, is one of rescision. We therefore hold that no error was committed in the removal of this case from the state court, and that the motion to remand was properly denied.

[3] This brings us to a consideration of the merits and whether the bill of complaint was properly dismissed on the ground that it fails to disclose a cause of action. The plaintiff asserts that the plan devised by the defendants is ultra vires, illegal, and void and on that ground he has brought this suit for rescision.

The plaintiff owns 200 shares, par value $100 each, of the capital stock of the Southern Company, which stock he acquired in 1916, and it is fully paid and nonassessable. He sues as such stockholder upon his own behalf, and on behalf of all other stockholders similarly situated, who may join with him and contribute to the expenses of the suit. No other stockholder, however, has joined in the suit. The fact that the plaintiff owns a relatively small amount of the stock and is the only stockholder bringing the suit constitutes no reason why his rights should not be protected, if they are being illegally violated.

The Southern Company was not obliged by its charter or by any law to continue to hold and operate its oil properties. Its continued ownership or possession of those properties was not essential to its corporate life and business. Its disposal of them was not equivalent to a dissolution of the corporation, and did not work a frustration of the corporate enterprise. At the time the directors adopted "the plan to dispose of the oil properties, the Supreme Court had rendered its decision in United States v. Reading Co., 253 U. S. 26, 40 Sup. Ct. 425, 64 L. Ed. 760, and there was pending in that court the case of United States v. Lehigh Valley Railroad Co., 254 U. S. 255, 41 Sup. Ct. 104, 65 L. Ed. 253, the decision in which was handed down five days after the plan was adopted. Congress had adopted on June 29, 1906, the Hepburn Act (U. S. Comp. Stat. Ann. 1916, vol. 34, pt. 1, p. 585), containing the commodities clause, and it seemed to the directors to be a wise step to divorce its transportation business from its other enterprises, and that, as it could not develop its oil properties so long as it directly or indirectly owned them, it should dispose of them. It was therefore determined that they should be distributed to the stockholders.

But it was not feasible to distribute them in kind. It was thought best to organize the Oil Company as a means of facilitating the distribution. The plan was accordingly devised of fixing the capitalization of the new company at a figure which would give the stockholders of the Southern Company stock in the new company share for share. But it was concluded not to distribute to the stockholders the entire value of the oil properties, but that a portion of the value should be retained by the Southern Company and that only the excess over $43,750,000 should be distributed to the stockholders. As it was, however, desirable to separate entirely the oil properties from the transportation properties, it was decided that the Southern Company should not itself retain any portion of the Oil Company's stock, but should instead distribute all of the stock and charge the stockholders a portion of its value. They proposed, therefore, to offer the stock to their stockholders at $15 per share. The question of whether the plan decided was ultra vires does not depend upon whether it was wise or unwise, but in passing we may point out that, out of more than 3,000,000 shares, the plaintiff, holding 200 shares, is the sole dissenter who objects or assails the validity of what the directors adopted.

When a business corporation possesses a surplus in excess of the amount of its capital, the directors in their discretion may distribute it among the stockholders in proportion to their shares, and the fund so distributed is a "dividend." This discretion of the directors is subject to certain restrictions, so that no discrimination can be made between the stockholders in the mode of distribution agreed upon. But the discretion is unrestricted as to whether the distribution shall be made in cash, or in bonds, or in property, and under some circumstances in stock. Whether the directors shall sell the property, thereby converting it into cash, and make the dividend payable in cash, is a matter solely within their discretion; and in the particular case now before the court they decided not to sell the property. If the corporation has

stock in reserve, which it has not yet disposed of, or if it has the right under its charter to increase its capital stock, it is clear that the distribution may be made by means of a stock dividend.

In this case the charter gave the corporation, as already stated, the power to acquire stock in any then existing corporation, or in one thereafter formed, and to deal in all kinds of stock "in such manner as may * * * be determined by the directors of said corporation." In the exercise of that discretion it was decided that a new corporation should be formed to hold the oil properties, which should be transferred to it, and that the shares of its stock, representing the property transferred should be distributed among the stockholders of the Southern Company. We are unable to see why, under the broad powers expressly conferred upon the directors of that company, that method of distribution of the property among the stockholders was not within the discretion of the governing body, the directors.

When the directors came to the conclusion that the best interests of the Southern Company required that its oil properties should be segregated and disposed of, they were at liberty to accomplish that result by a sale of the properties to third persons; but there certainly was nothing in the company's charter which made procedure by way of sale compulsory. It was for the directors, under the powers which the charter gave them to determine whether it was desirable to adopt that method or some other. They might very well have concluded that a sufficient number of potential purchasers could not be found to make it probable that the company would receive full value for the properties which the plaintiff claims were worth at least $143,750,000. For that or some other reason which seemed to them sufficient they chose not to proceed by way of sale.

So they might have decided to accomplish the segregation and disposal of the properties by making an absolute gift of the whole of them to the stockholders. But for reasons which it is not within the province of this court to review they did not decide to adopt that method. But they concluded that it would promote the best interests of the Southern Company that it should receive something for the properties which it was proposed to turn over to the stockholders in the manner finally decided upon. The properties to be parted with not being divisible in kind, they decided to keep them together by a transfer to a corporation organized for the purpose and distributed through the stock of such corporation and that the stock should be offered to all the stockholders of the Southern Company pro rata, and on such terms as not to operate oppressively or unequally.

The directors therefore gave to holders of stock of the Southern Company the right to purchase at $15 per share, one share of stock of the new company for each share of Southern Company stock held at the close of business on January 14, 1921, and registered on the books of the company at that time. It placed the stockholder in a position where it was necessary for him to do one of two things to benefit himself or avoid a loss: (1) Buy the stock of the new company at $15 a share, the stock being worth much more than the price at which it was offered; or (2) sell his right to buy such stock. If the stockholder

should refuse either to buy or to sell his right to buy, and should consequently suffer a loss in the lessened value of his Southern Company's stock, the loss would be self-imposed, and would not properly be attributable to the action of the directors.

To say that this plan practically amounted to selling a man what already belonged to him is, of course, quite unwarranted, and is based on a misconception of the law. That a stockholder as such is not the owner of any part of the corporate property is so well established in the law as to need no citation of authorities to support it.

The complaint alleged that no stockholders' meeting of the Southern Company was held or called for the purpose of authorizing or ratifying the plan which the directors adopted for the transfer of the properties. But no action by the stockholders was necessary. It is quite true that the directors of a corporation cannot as a rule unless authorized to do so by the shareholders, sell out en masse all its property, and thus put an end to its business and defeat the objects of its creation. Geddes v. Anaconda Mining Co., 254 U. S. 590, 596, 41 Sup. Ct. 209, 65 L. Ed. 425; Chicago City Railway Co. v. Allerton, 18 Wall. 233, 21 L. Ed. 902; Rollins v. Clay, 33 Me. 132. But they have, of course, even such power where it is conferred upon them by the charter or by statute. St. Louis v. Gaslight Co., 70 Mo. 69. In the charter of the Southern Company it was expressly provided that the corporation might sell "all kinds of personal and real property to such amount as the directors * * * may determine." We need not inquire whether this would have justified the directors, without authority from the shareholders, in selling out all property of the Southern Company, or such properties as were essential to its corporate life and business. It is enough that the authority conferred was certainly broad enough to warrant the sale of its oil properties, which were not essential to its corporate life and would not bring about an abandonment of the corporate enterprise.

It cannot be claimed that the Southern Company could not lawfully acquire the stock of the Oil Company. The right of one corporation to acquire the stock of another corporation is a question about which a difference of opinion has existed in the courts; but there is no difference of opinion on the question when the charter of the corporation itself expressly authorized it to do so, and such authority is found in the charter of the Southern Company which declares that it may acquire by purchase or otherwise the stocks and securities of any corporation.

Then it is said that the Southern Company could not transfer the oil properties for stock which it purposed to distribute among the stockholders but that the transfer should have been made for money only, for the reason that a stockholder may not lawfully be compelled to accept a change of investment made for him by others or to elect between losing his interest or entering a new company. This question is discussed in Geddes v. Anaconda Mining Co., supra, in a case where all the property of the corporation was sold for the stock without the approval of the stockholders. It did not appear in that case, as it does in this, that the company was expressly authorized to acquire the stock

of other corporations. In referring to the rule that the sale of all the assets should be for money only, and that stockholders should not be compelled to accept a change of investment made for them by others, the Supreme Court said:

"But it has been suggested that this rule also should be subject to the exception that, when stock which has an established market value is taken in exchange for corporation property, it should be treated as the equivalent of money, and that a sale otherwise valid should be sustained. Noyes, Incorporate Relations, § 120, and cases cited. We approve the soundness of such an exception. It would be a reproach to the law to invalidate a sale otherwise valid, because not made for money, when it is made for stock which a stockholder receiving it may at once, in the New York or other general market, convert into an adequate cash consideration for what his holdings were in the corporate property." 254 U. S. 598, 41 Sup. Ct. 212, 65 L. Ed. 425.

Courts may take judicial notice of facts of common knowledge and of well-known financial conditions. We are entitled to take notice of the marketability of certain stocks and the practical equivalence of such stocks to cash; and after the action taken by directors of the Southern Company, giving to its stockholders the right to acquire one share of the new stock for each share of the Southern Company stock held by him upon payment of $15, or, if he preferred, the right to assign to another his privilege of purchase, those rights to the public knowledge have been dealt with on the New York Stock Exchange and the New York curb, and have enjoyed a broad and active market. If a stockholder did not desire to take advantage of his right to acquire the new stock, he had a market where he could realize upon his right and in effect receive his proportionate distributive share of the assets transferred to the Oil Company.

[4] The suit shows that a difference of opinion exists between the single stockholder, who brings this suit, and the directors, as to whether the oil properties of the Southern Company should have been segregated and disposed of at all, or as to whether the entire value of those properties should have been given outright to the stockholders, without anything in the way of compensation to the Southern Company for the loss by it of the revenues consequent upon the transfer of the properties. The judgment of the complaining stockholder is not to be substituted for the judgment of the directors in respect to any such matters, which rested exclusively in the discretion of the directors. It does not seem to us that the directors in anything they have done have violated any legal right possessed by the complaining stockholder.

In Ellerman v. Chicago Junction Railways & Union Stockyards Co., 49 N. J. Eq. 217, 23 Atl. 287, which was a suit by stockholders to enjoin as ultra vires the execution of an agreement entered into by directors, the court said:

"Individual stockholders cannot question, in judicial proceedings, the corporate acts of directors, if the same are within the powers of the corporation, and, in furtherance of its purposes, are not unlawful or against good morals, and are done in good faith and in the exercise of an honest judgment. Questions of policy of management, of expediency of contracts or action, of adequacy of consideration not grossly disproportionate, of lawful appropriation of corporate funds to advance corporate interests, are left solely to the honest decision of the directors, if their powers are without limitation or free from restraint. To hold otherwise would be to substitute the judgment and

discretion of others in the place of those determined on by the scheme of incorporation."

We may also add that it is well settled that, in the absence of usurpation, of fraud, or of gross negligence, courts of equity do not interfere, at the suit of a dissatisfied stockholder merely to overrule or control the discretion of the directors on questions of corporate management or policy. 14 A. C. J. 84; Burden v. Burden, 159 N. Y. 287, 54 N. E. 17; Figge v. Bergenthal, 130 Wis. 594, 109 N. W. 581, 110 N. W. 798. Within the limits of their authority the directors possess full discretionary power. Post v. Buck's Stove & Range Co., 200 Fed. 918, 119 C. C. A. 214, 43 L. R. A. (N. S.) 498.

We do not find in the action complained of that the directors have acted in excess of the powers given them in the charter, or that they have committed any breach of their trust.

Decree affirmed.