**In re CONSOLIDATED GAS UTILITIES CO.**

No. 1071.

District Court, D. Delaware.
Oct. 12, 1934.

Hugh M. Morris and Edwin D. Steel, Jr., both of Wilmington, Del., for petitioning creditors and petitioners for transfer.

Clarence A. Southerland (of Ward & Gray), of Wilmington, Del., and Robert Le-Roy, of New York City, for A. M. Lamport & Co., Inc., et al., bondholders.

Thomas Reath, Jr. (of Drinker, Biddle & Reath), of Philadelphia, Pa., for first mortgage bondholders.

John Biggs, Jr., of Wilmington, Del., and Raymond S. Fanning, of New York City, for Edmond T. Hogan, intervener.

NIELDS, District Judge.

In proceedings for reorganization, three creditors of Consolidated Gas Utilities Company filed a petition under section 77B of the Bankruptcy Act (11 USCA § 207). Thereafter the petitioning creditors petitioned for transfer of the proceedings to the Western district of Oklahoma as the territorial jurisdiction where the debtor has its principal place of business.

The issues raised by the petition to transfer are: (1) Where is the debtor's principal place of business and (2) will the interests of all the parties be best subserved by the transfer of the proceedings to such principal place of business?

Section 77B paragraph (a), 11 USCA § 207 (a) provides:

"The petition shall be filed with the court in whose territorial jurisdiction the corporation, during the preceding six months or the greater portion thereof, has had its principal place of business or its principal assets, or in any territorial jurisdiction in the State in which it was incorporated. The court shall upon petition transfer such proceedings to the territorial jurisdiction where the interests of all the parties will be best subserved."

After proceedings are instituted in one of the three territorial jurisdictions in which an original petition might have been filed, the court is empowered to transfer the proceedings to either of the other territorial jurisdictions provided the interests of all the parties will be best subserved thereby. In re Midland United Co. (D. C.) 8 F. Supp. 92.

■ The debtor has been in the hands of equity receivers for more than six months preceding the filing of the creditors' petition. It was suggested at the hearing of the petition that a corporation so administered has no principal place of business. The suggestion is unsound as the Supreme Court has declared:

"The corporation continued to have the only business owned before the appointment of receivers, though the actual conduct of its operations was for the time being vested in the court's appointees. Its corporate existence and functions as a corporation continued. Whether its affairs were in the course of winding up or were being managed in the hope of restoration of full control to the corporate agencies is immaterial. Until a winding up had been effected the business formerly conducted by the company in Chicago continued to be the respondent's business and not that of another, and the place where that business was conducted, whether by receivers or by the corporate officers, still remained the 'principal place of business,' in the common acceptation of the phrase." Royal Ind. Co. v. American Bond Co., 289 U. S. 165, 168, 53 S. Ct. 551, 553, 77 L. Ed. 1100.

Moreover, one of the widely recognized objects of section 77B was the reorganization of corporations in the hands of receivers.

■ The debtor having some principal place of business, the question is whether the Western district of Oklahoma is such place. This question is fully answered by the affidavits. It appears that in May, 1928, the debtor was organized to engage in the production, transmission, and distribution of natural gas. It acquired the assets of certain utility companies in Oklahoma and neighboring states and a controlling interest in the capital stock of Larutan Gas Corporation whereby it obtained control of other utility companies. In July, 1931, Consolidated Gas Service Company was organized and took over all of the physical properties and business of the debtor located in Oklahoma. It continued to operate those properties until placed in the

hands of equity receivers, November, 1932. From the date of its organization down to July 1, 1931, the principal operating and executive office of the debtor was in Oklahoma City. Its president and secretary-treasurer resided and had their offices there. All books of account, primary records, original title papers, contracts, abstracts, and other important documents were kept there. All operations of the debtor in connection with the production, transportation, and distribution of natural gas and the transaction of all of its affairs were directed from the Oklahoma City office. All its principal contracts were negotiated and made there. It maintained during the above period thirty-seven bank accounts, thirty-three of which were in Oklahoma, three in New York, and one in Texas. The principal bank account was at all times in Oklahoma City and remittances from that account were made from time to time to New York as required for the payment of interest and dividends. From July until September 8, 1931, the operations and affairs of the debtor were handled in the same manner as theretofore. On the later date the secretary-treasurer moved his office to Wichita, Kan. The debtor's financial records and books of account were at that time moved to Wichita, Kan. The supervision and management of the Texas properties and the business affairs and operations of the various subsidiaries continued to be handled at Oklahoma City. All unpledged securities of debtor, together with its abstracts of title, contracts, and other important documents, remained at all times in the Oklahoma City office.

In November, 1932, the debtor became exclusively a holding company. Its business then consisted of the direction and supervision of the operation and affairs of its subsidiaries in Oklahoma, Kansas, and Texas. All such matters were handled at its Oklahoma City office. The Wichita office was closed in November, 1932, and the books of the company and the secretary-treasurer's office were removed to Oklahoma City. All of debtor's securities, including the capital stock of its subsidiaries, except such as were pledged, remained in Oklahoma City. The minute books of the corporation have been kept in the office of its assistant secretary in New York City and meetings of its board of directors were usually held there. A duplicate original of the minute book has always been maintained in the Oklahoma City office.

November 29, 1932, the United States District Court for the Western District of Oklahoma appointed a temporary receiver of the properties of the debtor and of its subsidiary, Consolidated Gas Service Company, December 22, 1932, this appointment was made permanent. The receiver continued to operate all business of the debtor from the Oklahoma City office, including the management of the operations of the subsidiary companies, in the same manner as the debtor had operated them prior to receivership.

From the foregoing, it is clearly established that Oklahoma City in the Western district of Oklahoma is, and for six months preceding the filing of the creditor's petition was, the debtor's principal place of business.

Having determined that the debtor's principal place of business is in the Western district of Oklahoma, the remaining question is whether the interest of all the parties will be best subserved by the transfer of proceedings to that district.

It may be that a majority of the creditors in number and amount reside closer to the district of Delaware than to the district of Oklahoma. If the crucial question was their convenience in attending court, the district of Delaware would obviously be the more convenient district. The test of transfer under section 77B is not convenience only but the best interests of all the parties. Many considerations besides convenience enter into the determination of that question.

For almost two years the district court of Oklahoma has administered the affairs of the debtor through an equity receiver and is necessarily conversant with its business. For a like period, the same court has administered the affairs of the principal subsidiary of the debtor, Consolidated Service Company, through the same receiver. Moreover, from the date when the Consolidated Service Company was organized and became the operating subsidiary of the debtor, it assumed the payment of a large part of the $8,000,000 first mortgage first lien collateral bonds of the debtor. During the receivership, the interest on these bonds has been regularly paid from funds of Consolidated Service Company. The wisdom of such policy in the future can be best determined in Oklahoma. It is of paramount importance in any reorganization of the debtor that the properties of both corporations be handled harmoniously. This can only be done, so as to best subserve the interests of all parties, by the district court of Oklahoma.

The petition to transfer should be granted.