**PORTA et al. v. WATTS et al.**

No. 1913.

Circuit Court of Appeals, Tenth Circuit.

Feb. 12, 1940.

O. L. Lupardus, of Tulsa, Okl. (Robt. W. Raynolds, and Underwood, Canterbury, Pinson & Lupardus, all of Tulsa, Okl., on the brief), for appellants.

Royce H. Savage, of Tulsa, Okl. (Eugene O. Monnet, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, HUXMAN, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The parties will be referred to as follows: The United Royalty Company as "United," its managing trustee as "Watts, trustee," the Liberty Royalties Corporation as "Liberty."

The United Royalty Company is a trust estate organized and existing under the laws of Oklahoma under a written declaration of trust executed on August 11, 1922. Two million beneficial interests were authorized and 1,940,000 outstanding, 913,903 of which are owned by the Liberty Royalties Corporation. The other units are held by persons residing in about twenty states.

United has its principal office and place of business in Tulsa, Oklahoma, and Watts, the managing trustee, who has held that position since February 20, 1933, also has his residence there. Its other trustees are A. B. Rowley and Fred H. Morton, the former living in Tulsa and the latter in Winfield, Kansas. All business has been transacted for the past several years in Tulsa. No unit holders thereof live in the Eastern District of Oklahoma. The greater portion of its physical properties is located in Kansas. The most substantial and valuable properties owned by United in Oklahoma are located in the Western District. The office of the trustees of Liberty is in Tulsa. The residence of two of said trustees, to-wit, E. H. Gubser and E. B. Howard, is in Tulsa, and that of the other trustee, A. Francis Porta, in El Reno in the Western District. No creditor of the United lives in the Eastern District of Oklahoma.

On August 24, 1938, the trustees of Liberty instituted an action in the United States District Court for the Northern District of Oklahoma, in which, among other things, it was alleged that Watts and the other trustees, Fred H. Morton and A. B. Rowley, of United had unlawfully and fraudulently conducted the business of United so as to gain profit and advantage to themselves to the detriment of Liberty and the other unit holders, and prayed for the removal of such trustees and an injunction restraining the trustees from encumbering or disposing of the property, and for the appointment of a receiver of United, and an accounting. An order was entered and the United trustees were cited to appear on August 29, 1938 and answer the complaint and show cause why a receiver should not be appointed.

On August 29, 1938, United filed in the United States District Court for the Eastern District of Oklahoma a petition for reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in which it is alleged that it was organized primarily as a royalty company, owning, holding, and managing about 50,000 acres of oil and gas royalty interests located in Oklahoma, Kansas, Texas, New Mexico, and Arkansas; that such property had a reasonable market value of $200,000; that it owed Cunningham & Walker for legal services $700, unpaid back salary to Watts as managing trustee $1,100, an undetermined amount to Max Cohen for legal fees for various services rendered from February, 1933, to date, and $36,518.21 to the Collector of Internal Revenue of the United States for assessments for unpaid federal income taxes, documentary stamp taxes, and federal capital stock tax, with estimated penalties and interest; that it has a more or less fixed monthly income derived from royalties, rentals, and bonuses in the amount of $600 and a more or less fixed current operating liability of approximately $300 per month; that on account of the indicated tax assessments due the Collector, which the debtor is unable to pay, and on account of which the Collector will probably cause a jeopardy assessment to be issued and attach and seize the debtor's property and offer same for sale, and the present overproduction of oil, the depressive condition of the oil market, lack of demand for oil and gas royalties, would cause most, if not all, the properties to be sold to satisfy such claim, and the debtor's estate, therefore, in serious danger and peril of being entirely depleted and exhausted; that the debtor is fundamentally solvent and will eventually be able to pay all its liabilities; that no prior proceeding under the National Bankruptcy Act is pending; that the debtor is unable to meet its debts when and as they mature and desires to effect a plan of reorganization under Section 77B, and that such a plan will be promptly submitted in writing at or before the time of the hearing upon the petition.

The trustees of Liberty and Liberty as unit holders of United entered an appearance in the Eastern District of Oklahoma in such reorganization proceeding, and filed a motion to transfer such proceeding to the Northern District of Oklahoma, and also a petition to dismiss on the ground that the court was without jurisdiction and that the petition was not filed in good faith. Hearings were had on the issues raised by such motions, and on February 24, 1939, the court entered an order denying the ap-

plication of Liberty to vacate and dismiss the petition and to transfer the cause to the Northern District of Oklahoma.

The evidence disclosed that Watts, the managing trustee of United, lived in Tulsa where he maintained the offices of United, at which all business out of Tulsa was also transacted; that United owned royalty interests in Oklahoma, Kansas, Texas, New Mexico, and Arkansas; that there were 1,940,000 units outstanding owned by over 400 separate unit holders scattered over 20 states; that Watts owned 29,000 units and had contracts to purchase 20,000 more, and Liberty owned 913,903 units; that United had an income of approximately $600 a month and had a total income since Watts was appointed trustee in 1933 of something over $30,000, and that he had paid dividends of only $6,000 to unit holders; that he had drawn a salary of $150 a month, making a total outgo of approximately $10,000. On August 24, 1938, when the action was filed in the Northern District to remove Watts as trustee, the United had $300 in the dividend account and approximately $1,100 in the general account, and from that time until August 29, 1938, when the petition for reorganization was filed, practically all of this money was paid out. Watts testified that he paid $150 salary to himself on one occasion, $900 on another, $750 on another, and $50 court costs, $60 rent, and $30 which was charged to himself, after the suit was filed against him in the Northern District.

He further testified that in addition to between $9,000 and $10,000 that he paid himself a salary from the time he was appointed trustee, he also paid himself more than $3,500 for traveling expenses; that he spent approximately $14,000 for attorney's fees and court costs.

Robert Raynolds and E. H. Gubser immediately after the petition was filed in the Northern District, examined the books, records, and vouchers of United, making notations thereof, and some of the vouchers produced at the trial had memoranda additional to what was on such vouchers when they examined them.

With respect to the good faith in filing the petition for reorganization, Watts and Eugene O. Monnet testified that immediately prior to the filing of the petition for reorganization they had a conference with a Mr. Herring of the Collector's office, concerning the tax assessments, and that Herring told them that he was going to recommend that a jeopardy assessment be made; that Monnet recommended the filing of the petition for reorganization in order to protect the property of United from a forced sale for the payment of the tax claims, and that the petition for reorganization was filed for that purpose.

The contention of Liberty is that the United States District Court for the Eastern District of Oklahoma did not have jurisdiction to entertain the petition for reorganization.

Section 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. § 207, provides: "The petition shall be filed with the court in whose territorial jurisdiction the corporation, during the preceding six months or the greater portion thereof, has had its principal place of business or its principal assets, or in any territorial jurisdiction in the State in which it was incorporated."

Under this provision the filing of the petition in the Eastern District of Oklahoma was permitted.

In Act of June 22, 1938 (Chandler Act), Section 128 thereof, 11 U.S.C.A. § 528, provides: "If no bankruptcy proceeding is pending, an original petition may be filed with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets for the preceding six months or for a longer portion of the preceding six months than in any other jurisdiction."

The last paragraph of this act provides that it shall be enforced on and after three months from date of its approval, which would be September 22, 1938.

Section 276 of Ch. 10, subdivision c of such act, 11 U.S.C.A. § 676, sub. c, provides:

"The provisions of section 77A and 77B of chapter VIII, as amended, of the Act entitled 'An Act to establish a uniform system of bankruptcy throughout the United States', approved July 1, 1898, shall continue in full force and effect with respect to proceedings pending under those sections upon the effective date of this amendatory Act, except that—

"(1) If the petition in such proceedings was approved within three months prior to the effective date of this amendatory Act, the provisions of this chapter shall apply in their entirety to such proceedings; * * *."

The petition here was filed on August 29, 1938, and therefore within three months prior to the effective date of the Chandler Act. In order to give effect to the last paragraph of the Act and subdivision c of Section 276, Ch. 10, supra, which seems to be in conflict, it appears that the filing of the petition within three months prior to the effective date of the Chandler Act is under 77B and could, therefore, be properly filed in the Eastern District of Oklahoma. To give meaning to said subdivision c, upon the approval of such petition the Chandler Act in its entirety applied to the entire proceeding. As Section 128 of said Act provides that an original petition may be filed with the court in whose territorial jurisdiction the corporation has had its principal place of business or its principal assets for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction, the petition here should have been transferred to the Northern District after its approval by the court in the Eastern District. The transfer should have been for the additional reason that the interests of all the parties would be best served by such a transfer. Section 118, Ch. 10, of the Chandler Act, 11 U.S.C.A. § 518, provides: "The judge may transfer a proceeding under this chapter to a court of bankruptcy in any other district, regardless of the location of the principal assets of the debtor or its principal place of business, if the interests of the parties will be best served by such transfer." See In re Consolidated Gas Utilities Co., D. C. Del., 8 F.Supp. 385; In re Botany Mills Co., D. C. Del., 10 F.Supp. 267; In re Syndicate Oil Corp., D. C. Del., 9 F.Supp. 127.

The principal office, the records, the bank account, and the residence of the managing trustee and one of the other trustees of United were located in Tulsa in the Northern District. Liberty, the principal unit holder, had its principal place of business and conducted its operations from Tulsa in the Northern District. A receivership proceeding was pending against United in the Northern District. Since the books and records were there, as well as the managing trustee, it would appear to be more convenient for not only Liberty but also any other unit holder to litigate his claim against the debtor in the Northern District.

Under the facts in this case, there being in the main no conflict, in view of the policy declared in the Chandler Act, the act of the court in denying the motion to transfer constituted an abuse of discretion. This case is reversed and remanded with directions to transfer same to the Northern District.